613 So.2d 924 (1993)
Frank MAKOWSKI, Appellant/Cross-Appellee,
v.
Julia B. MAKOWSKI, Appellee/Cross-Appellant.
Nos. 90-2337, 90-2320, 90-2893 and 91-1.
District Court of Appeal of Florida, Third District.
January 26, 1993.
Rehearing Granted in Part, Opinion Amended in Part March 23, 1993.
*925 Elser, Greene & Hodor, P.A., and Cynthia L. Greene, Miami, for appellant.
Elizabeth S. Baker, P.A., Miami, for appellee.
Before JORGENSON, COPE and GODERICH, JJ.
PER CURIAM.
These are four consolidated appeals from a final judgment of dissolution, a final judgment awarding primary residential custody, a judgment of attorney's fees, and an order granting a motion for contempt. We affirm in part and reverse in part.
The parties were married in 1976 and had two children who were ages 12 and 10 at the time of the final hearing. The husband had his own surveying business and the wife worked part-time in the business, performing clerical duties. Both parties sought custody of the two children. The trial court bifurcated the trials so the court could determine the custody question separate from the issue of distribution of assets.
At the custody trial, both parties stipulated that each was a fit parent. At the close of the evidence, the trial court awarded custody of the two children to the mother. The father appeals this determination. We conclude there was competent substantial evidence presented at the trial to support the court's ruling. See Richardson v. Richardson, 442 So.2d 1005 (Fla. 3d DCA 1983).
At the trial of the property issues both parties presented evidence concerning the valuation of marital assets. The evidence showed the husband purchased his surveying business for $5,000 in 1973, three years before he married the wife. After the husband's business underwent several transformations, he dissolved it in 1986 and opened a new business. In 1988, the husband sold a one-half interest in the business to a partner for $8,000.
The trial court found that the husband's one-half interest in the business was entirely a marital asset. We do not disturb that determination.
The issue of the valuation of the business was vigorously contested at trial. The wife's expert and the husband's expert *926 used different methods of valuation yielding very disparate opinions on value. The wife's expert contended that the husband's one-half interest in the surveying business had a fair market value of $190,000; the husband's expert, $24,197. The parties also disputed whether a value could properly be included for the goodwill of the business.
The trial court determined that the value of the business was $120,000 and the husband's one-half interest was worth $60,000. The trial court did not state how the value was derived. It appears probable that the value included an allowance for goodwill, since the value set by the court exceeds the value of the tangible assets testified to at trial.
After final judgment was entered in this case, the Florida Supreme Court decided Thompson v. Thompson, 576 So.2d 267 (Fla. 1991). In Thompson the court held that "if it exists and if it was developed during the marriage, professional goodwill is a marital asset which should be included in the marital estate upon dissolution." Id. at 268.[1] The court defined goodwill and set out a method for courts to use to measure it. Id. at 269-70. For purposes of equitable distribution "such goodwill, to be a marital asset, must exist separate and apart from the reputation or continued presence of the marital litigant." Id. at 270. The court stated:
The determination of the existence and value of goodwill is a question of fact and should be made on a case-by-case basis with the assistance of expert testimony.
Numerous methods for valuing goodwill have been advanced in cases and the literature on this subject. E.g., In re Hall, 103 Wash.2d 236, 692 P.2d 175 (1984) (recognizes five methods of valuation). The clearest method would be the fair market value approach, which is best described as what would a willing buyer pay, and what would a willing seller accept, neither acting under duress for a sale of the business. The excess over assets would represent goodwill. We prefer this method and direct that it be the exclusive method of measuring the goodwill of a professional association. Actual comparable sales are not required, so long as a reliable and reasonable basis exists for an expert to form an opinion. See Hanson [v. Hanson, 738 S.W.2d 429 (Mo. 1987)].
576 So.2d at 270.
The inquiry, in other words, is to determine what a willing buyer would pay, and a willing seller accept, where the selling professional will not have a continued presence in the business after the sale. After review of the transcript herein, we conclude that the testimony adduced before the trial judge is sufficient to satisfy the Thompson standard and to support the trial court's valuation. Both experts testified as to the value each thought a willing buyer would pay, and a willing seller would accept, were this business to be sold. The assumption plainly was that after the sale of the business, Mr. Makowski would no longer be involved.[2] Since both parties' experts valued the tangible assets of the business far below $120,000, and the court set the total value of the business at $120,000, it is evident that some goodwill value was allocated to the business, although not in as large an amount as the wife's expert advocated. We conclude that the record developed below was consistent with Thompson and that the value arrived at was within the range which would be permissible given the factual and expert testimony.
The wife contends by cross-appeal that the trial court should have awarded her rehabilitative alimony. The wife has an A.A. degree and is qualified for substitute teaching. She is undertaking studies to earn a four-year degree, so that she may obtain a full-time teaching certificate. Upon completion of studies, her present *927 earning potential of $11,000 per year would increase to at least $17,000 per year. The husband's earnings are in the range of $31,000 per year, not counting automobiles and other items paid for directly by the business. The request for rehabilitative alimony was entirely reasonable and appropriate. See Villaverde v. Villaverde, 547 So.2d 185, 187 (Fla. 3d DCA 1989).
It appears that the trial court considered the request for rehabilitative alimony in conjunction with the overall division of marital property. The trial court determined that the marital property should be divided evenly between the parties. The court awarded the husband his one-half interest in the surveying business, to which one-half interest the court attributed a value of $60,000. The court awarded the husband a vacant lot worth $30,000. The court awarded the marital residence to the wife, and determined that the marital home had an equity of $50,000. The court then required the husband to pay the wife $20,000 in installments over two years, thus resulting in an equal property division.
From statements made in the proceedings below, it appears that the court intended for the $20,000 installment payments to also serve as the wife's rehabilitative alimony. The court thus declined to make a specific separate alimony award. Through post-judgment contempt proceedings which have been consolidated with the appeal from the final judgment, it appears that the husband has not made any of the installment payments. The husband eventually filed a petition in bankruptcy.
The trial court has great latitude in fashioning a fair and equitable matrimonial decree. Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980). On the facts present here, however, in our view the trial court erred by requiring the wife to look entirely to her share of the equitable distribution in order to obtain rehabilitative alimony. The theory of equitable distribution is that the property accumulated during the course of the marriage is a joint asset and is presumptively to be divided equally. Robertson v. Robertson, 593 So.2d 491, 493 (Fla. 1991). The trial court was entirely correct in saying that the marital assets should be shared equally by the parties.
However, the husband has the greater earning potential and was given the income-earning asset  the interest in the surveying business. The wife was given a non-income-earning asset  the home  and a right to cash payments to equalize the property distribution. The effect of denying a specific award of rehabilitative alimony is to require the wife to invade her share of the relatively modest equitable distribution in order to upgrade her job skills, even though she has the greater financial need and the husband has the greater ability to pay.
In the present case the need for the husband to make cash payments to the wife for purposes of equitable distribution was created when the vacant lot was granted to the husband, along with the interest in the business. This created an asset imbalance in favor of the husband. The court equalized the imbalance by requiring that $20,000 be paid to the wife in installments. Once the installment payments were added to child support, the wife's request for rehabilitative alimony was met with the husband's objection that the husband did not have the ability to pay any greater amount out of his current income.
Although it is not clear that it remains an option, the problem could have been avoided by conveying the vacant lot to the wife, or requiring that the lot be sold and proceeds divided. By that means the marital property could have been equally divided without requiring periodic payments from the husband. Under that scenario, a rehabilitative alimony award would have been within the ability of the husband to pay from his current income.[3] The net effect of the judgment was to short-change the wife.
We reverse the denial of rehabilitative alimony and remand with directions to enter *928 a rehabilitative alimony award in the wife's favor. The court may make such changes in the scheme of equitable distribution as may be necessary or appropriate.[4]
We strike the contempt citation entered against the wife.[5]
We find no other reversible error.
Affirmed in part, reversed in part, and remanded for further proceedings consistent herewith.
NOTES
[1] The court disapproved of this court's opinion in Moebus v. Moebus, 529 So.2d 1163 (Fla. 3d DCA 1988), review denied, 539 So.2d 475 (Fla. 1989). Thompson, 576 So.2d at 270 n. 3.
[2] This is not a situation in which Makowski was the sole professional employee of the business. In addition to Makowski's partner, there were other surveyors who were employees.
[3] Another option would have been to defer the installment property distribution payments until the end of the rehabilitative period.
[4] For example, the requirement to make installment lump sum alimony payments could be deferred, or if available, other property could be utilized to equalize the equitable distribution. We recognize that the trial court's options with respect to modifying the scheme of equitable distribution may be limited by the husband's bankruptcy filing.
[5] When the husband defaulted on his periodic payment obligations after the judgment was entered, it was error to refuse to grant the wife security for her position and to require, as the trial court did, the wife to convey the vacant lot free and clear to the husband. The husband was to sell the property in order to obtain the funds to pay the wife. The husband conveyed the property but failed to pay the wife. In view of the husband's conduct, it would be inequitable to allow the contempt citation against the wife to stand. We therefore strike it.

In view of what appears to have been affirmatively misleading statements made by the husband to the trial court about his intention to use the vacant lot to obtain the funds to pay the lump sum distribution to the wife (when he in fact conveyed it to his girlfriend and never paid his obligation), it would be inequitable to allow the contempt citation against the wife to stand. We therefore strike it.