652 So.2d 1178 (1995)
Karen McLean, Appellant,
v.
Wallace McLean, Appellee.
No. 93-03948.
District Court of Appeal of Florida, Second District.
March 10, 1995.
Rehearing Denied April 17, 1995.
*1179 Cynthia Byrne, Hall of Law Offices of Silverio & Hall, Miami, for appellant.
John R. Asbell of Asbell, Coleman & Ho, P.A., Naples, for appellee.
ALTENBERND, Acting Chief Judge.
Karen McLean appeals a final judgment of dissolution of marriage from her former husband, Dr. Wallace McLean. Mrs. McLean raises several issues concerning the equitable distribution of marital assets, challenges the denial of an award of attorney's fees, and argues that she was entitled to permanent alimony. We affirm the order in all respects except for the denial of permanent alimony.
The parties were married in 1967, and are both approximately fifty years old. They have four children, one of whom is a minor. The three adult children are in college or graduate school. Dr. McLean is a physician, specializing in obstetrics and gynecology. His average annual income exceeded $450,000 in the six years before the divorce. During the marriage, the family enjoyed a high standard of living.
Mrs. McLean taught kindergarten in the early years of the marriage. She obtained a master's degree in education in 1970. At the time of the final hearing, however, she was not certified as a school teacher in any state. She had not worked on a full-time basis outside the home for many years. Instead, she had devoted herself to raising the four children and being involved in community organizations. It is clear that both the husband *1180 and the wife value educational enrichment for their children. They jointly decided that Mrs. McLean should remain available to assist the children in their community and academic pursuits.
With the husband's extensive income, the parties acquired net marital assets totalling approximately $3,500,000. The trial court attempted to divide these assets equally. The major assets awarded to the wife included the marital home, a pension plan valued at $590,000, and over $240,000 in cash and marketable securities. The husband was also required to make an equalizer payment of $190,000, in 60 monthly payments at 8% interest.[1] Although the wife accurately notes that the trial court accepted the husband's more conservative valuations on several marital assets, we conclude that the trial court's overall equitable distribution is supported by competent substantial evidence and is not an abuse of discretion.
The trial court denied the wife's request for permanent alimony, and instead awarded monthly rehabilitative alimony of $2,250 for a period of one year. We reverse this award for several reasons.
First, the evidence in this record is so sparse that the trial court could not, and did not, make any findings concerning a rehabilitative plan and the objective goals expected of the wife during rehabilitation. See Collinsworth v. Collinsworth, 624 So.2d 287 (Fla. 1st DCA 1993). The judgment merely finds that she "should be able to regain her skills and find appropriate employment within twelve months." Without at least a basic description of the action required of her during rehabilitation and a disclosure of the target income, the wife and any successor trial judge are left with little guidance as to whether future conditions would warrant an extension or modification of the rehabilitative alimony, or shift of such award to permanent alimony. See Steinberg v. Steinberg, 614 So.2d 1127 (Fla. 4th DCA), review denied, 626 So.2d 208 (Fla. 1993); Bible v. Bible, 597 So.2d 359 (Fla. 3d DCA 1992). Especially when a party has not been employed outside the home for many years, the trial court should take care to structure a rehabilitative plan that can be objectively reassessed near the end of the rehabilitative term.
Despite her long hiatus from teaching, it is plausible that this fifty-year-old woman can find employment as a teacher. Nevertheless, we conclude that it was an abuse of discretion to award Mrs. McLean only rehabilitative alimony and not permanent alimony. This is a long-term marriage with a teenage child remaining in Mrs. McLean's primary care. A great disparity exists between her potential income and Dr. McLean's actual income. Mrs. McLean has no significant employment history because, during the term of the marriage, she devoted her full-time efforts to the marriage. A teaching income would provide only a small percentage of the income normally expended by this family during the last decade. See Steinberg, 614 So.2d 1127; Carr v. Carr, 522 So.2d 880 (Fla. 1st DCA 1988).
Second, in assessing the sources of income available to the husband under section 61.08(2)(g), Florida Statutes (1993), the trial court determined that Dr. McLean was capable of earning only $150,000 annually. This amount is a third of his actual average income over the last six years of the marriage. The trial court made this negative imputation of income because of evidence that Dr. McLean developed health and emotional difficulties arising from the stress of his medical practice. The husband's physicians have been encouraging him to reduce his work load. Dr. McLean, however, has not yet obeyed the advice of his physicians, and it is far from clear that he intends to take steps that might reduce his future income.
Thus, the evidence in this case does not support the finding that Dr. McLean has a present permanent ability to earn only $150,000 annually. It may well be that Dr. McLean *1181 should follow the advice of his doctors, but, after twenty-six years of marriage, there is little reason to divest his wife of the lifestyle associated with his past level of income unless and until that income actually declines. In other words, this may be the reason for a future modification in alimony, but not a present cause for a total denial of permanent alimony. See, e.g., Cloud v. Cloud, 638 So.2d 1038 (Fla. 1st DCA 1994) (holding trial court erred in reducing husband's projected income where there was no evidence to support finding that business income would appreciably decrease in immediate future as result of competition, and noting that such decrease, if and when it occurred, could be basis for modification of alimony).
Third, the trial court considered evidence from the husband's accountant on the extensive cost of sending the McLeans' children to college and graduate school. It is estimated that these costs could exceed $480,000. Although Dr. McLean may well feel a moral obligation to pay these expenses, he is not legally required to pay them. See Grapin v. Grapin, 450 So.2d 853 (Fla. 1984). Given the parties' strong commitment to education, they may wish to stipulate concerning these future expenses and the effect they will have on this divorce proceeding, see Madson v. Madson, 636 So.2d 759 (Fla. 2d DCA 1994),[2] but neither this court nor the trial court is authorized to add this factor into the divorce equation in the absence of some contractual agreement between the parties. See, e.g., Kilbride v. Kilbride, 172 Mich. App. 421, 432 N.W.2d 324 (1988), receded from on other grounds sub nom. Heike v. Heike, 198 Mich. App. 289, 497 N.W.2d 220, 221 (1993) (in setting wife's amount of alimony, trial court did not err in failing to consider husband's voluntary assumption of obligation to pay for adult child's college expenses where parties did not independently agree to share such expenses). Cf. Swigers v. Swigers, 176 Ill. App.3d 795, 126 Ill.Dec. 231, 531 N.E.2d 858 (1988) (where statute authorized trial court to provide for educational expenses of child who has reached majority, it was not error for court to consider husband's voluntary contributions to child's education in determining amount of wife's maintenance award). See generally Edward L. Raymond, Jr., Annotation, Divorce: Voluntary Contributions to Child's Education Expenses as Factor Justifying Modification of Spousal Support Award, 63 A.L.R. 4th 436 (1988).
Finally, the trial court rejected the wife's need for permanent alimony because it assumed that Mrs. McLean would have approximately $74,000 in investment income. The calculations supporting this assumption did not include a reduction in capital for the payment of her attorney's fees. More important, the trial court assumed that she will convert a pension plan into an asset producing a present annual income of $50,000.
When a party receives an asset in equitable distribution that will result in immediate investment income, we see no reason for that income to be excluded from consideration under section 61.08(2)(g). See, e.g., Lochridge v. Lochridge, 526 So.2d 1010 (Fla. 2d DCA 1988) (trial court erred in awarding wife lump sum alimony where she had net worth of over $1 million and monthly income of over $2,300 from salary and from assets awarded as part of equitable distribution). See also Carr, 522 So.2d 880; Barry v. Barry, 511 So.2d 649 (Fla. 4th DCA 1987), review denied, 523 So.2d 576 (Fla. 1988). On the other hand, in light of Pimm v. Pimm, 601 So.2d 534 (Fla. 1992), we are hesitant to encourage financial arrangements that require a party to convert prematurely a retirement or pension plan into an income source. See, e.g., Makowski v. Makowski, 613 So.2d 924 (Fla. 3d DCA 1993) (trial court erred in denying wife rehabilitative alimony where she would be forced to invade assets awarded in equitable distribution to upgrade her job skills and where husband had ability to pay rehabilitative alimony); Nisbeth v. Nisbeth, 568 So.2d 461 (Fla. 3d DCA 1990) (trial court abused discretion in denying *1182 wife's motion for attorney's fees where she would have had to invade her IRA awarded in equitable distribution to pay fees, and husband had present ability to pay). If Mrs. McLean returns to teaching at age fifty, it is fair to predict that her new employment will not cause her to amass a sizeable retirement plan. Given the parties' standard of living and the husband's established ability to pay, we conclude it was an abuse of discretion to force Mrs. McLean to forego future security in order to support a present lifestyle.
On remand, the trial court must award permanent alimony, and may also, if appropriate, award rehabilitative alimony, using the factors described in section 61.08 to determine the specific amount of such awards. The trial court is free to consider the parties' present economic circumstances in setting these amounts and, if fitting, may require the husband to secure his equalizer payments. If necessary, it may also reconsider its initial distribution of marital property, given that alimony and equitable distribution are interrelated and both are parts of an overall scheme. See Noah v. Noah, 491 So.2d 1124, 1128 (Fla. 1986).
Affirmed in part, reversed in part, and remanded.
BLUE and QUINCE, JJ., concur.
NOTES
[1] During oral argument, both parties indicated that this obligation would be better protected if the husband were required to secure this payment with a mortgage on available real estate. Although we do not reverse the award of this equalizer payment, we expressly authorize the trial court to order security for this payment on remand if such security is requested and is appropriate at that time.
[2] For example, the parties could jointly establish a revocable inter vivos trust for the benefit of their children's educational expenses. See, e.g., Schaeffer v. Schaeffer, 606 So.2d 369 (Fla. 3d DCA 1992). But cf. Martin v. Martin, 616 So.2d 158 (Fla. 3d DCA 1993) (trial court erred in ordering marital home sale proceeds to be used as college fund for children if proceeds not reinvested in another home).