ALTENBERND, Judge.
Michael Suit appeals the final judgment of dissolution of his marriage to Evelyn Suit. We affirm all aspects of this judgment with the exception of the amount of the award of permanent periodic alimony. The error in that award is caused primarily by the trial court’s failure to determine the true costs of the Wife’s future living arrangements and the effect of those costs on the investment assets that the Wife received in equitable disti'ibution. On remand, we anticipate that the trial court can limit its analysis to this relatively narrow issue.
The parties were married for approximately twenty-three years before they commenced these dissolution proceedings. They are in their mid-fifties and have one child, who is now a legal adult. The Husband works as a financial planner and earned in excess of $600,000 per year during the final five years of the marriage. The Wife had not been employed during most of the marriage, but she operated two small businesses that generated modest income. Other than a home mortgage, the parties had no debt and had accumulated significant assets both in retirement accounts and in other investments.
In light of the Husband’s income, the parties had established a lavish lifestyle. The trial in this case focused on establishing the parties’ standard of living. Neither party disputed that the historic standard of living was the primary method to be used to determine the Wife’s need for alimony. Based on this method, the trial court determined that the Wife “needed” $13,569 per month in alimony over and above the $6500 per month that was spent on the family’s only child. Adjusted for income tax, the trial court awarded the Wife $17,825 per month in permanent, periodic alimony.
In addition to this alimony, the Wife received half of the marital assets. The Husband received the marital home, valued at $850,000. He also became solely responsible for the related mortgage, resulting in a net asset for him of approximately $600,000. Because the Husband received this sizable illiquid asset, the Wife’s distribution was primarily liquid or investment assets. She received approximately $500,000 in retirement accounts and an additional $800,000 in other assets, more than $400,000 of which was invested in interest-bearing bonds.
By focusing on the established standard of living, the Wife reasoned that she was entitled to buy a house similar in value to the marital home. At the time of the final hearing, she was living in a house with an option to purchase, but she had not made any final plans to purchase the house. She theorized that she would use some of her liquid assets as a down payment on a house and would obtain a mortgage loan *197 for the balance. One of her experts described this as a good way for her to “invest.”
At the trial, the Husband argued that the Wife should have income imputed to her because she was underemployed in her two modest businesses. He also argued that her alimony should be adjusted to reflect the income that she would or could receive from both her retirement accounts and from her other investments. The trial court refused to impute income and likewise refused to adjust the alimony to reflect any income to the Wife from her extensive distribution of marital assets.
We conclude that the trial court did not abuse its discretion in refusing to impute income to the Wife, who was in her mid-fifties, had not been employed for many years, and wished to continue to develop the businesses that her Husband had encouraged her to start. Likewise, the trial court correctly refused to require the Wife to deplete her retirement accounts at this stage in her life. See McLean v. McLean, 652 So.2d 1178, 1181 (Fla. 2d DCA 1995).
On the other hand, we conclude that the trial court abused its discretion in finding that the Wife would have no income from her nonretirement assets. The undisputed evidence established that the $400,000 invested in bonds was returning $25,000 per year in income. The trial court’s final judgment suggests that it was confused about the distinction between invading the corpus of these assets and relying upon the income generated by the corpus. The trial court, for example, relied on this court’s decision in Holley v. Holley, 380 So.2d 1098 (Fla. 2d DCA 1980), to support its decision that the Wife should not “have to deplete her asset or change the character of her capital assets to maintain some semblance of the standard of living she enjoyed during the marriage.” Holley was a ease in which the wife’s assets consisted primarily of real estate. Id. at 1100. The wife in Holley was not awarded permanent alimony but needed funds to sustain her while she rebuilt her own legal practice. Id. In this case, the Wife does not need to invade the character of the bond fund or to change the character of this asset in order to have a significant annual income. The same may be true for other assets awarded to the Wife.
It appears likely that the trial court’s decision not to rely on income from the assets awarded to the Wife was based in significant part on its expectation that the Wife might invest $500,000 in a home. Her desire to eventually buy a home is admittedly a confusing part of the equation in this case. The trial court’s award of alimony is based on a schedule of need that includes $3529 per month to pay a mortgage loan, when the Wife has no such loan. There was also a payment of $288 per month for membership in a homeowners’ association when it is unclear that the Wife currently is or will be a member of such an association. We conclude that these portions of the award are not currently supported by competent, substantial evidence.
On remand, the trial court is free to take-additional evidence on these issues and would be well-advised to make more specific findings about the Wife’s housing, including the true costs that the court finds will be associated with the housing and the effect it will have on her investment assets.
Finally, we note that the Husband has raised a legitimate concern about whether this portion of the alimony payment contains a concealed savings component that contravenes the holding in Mallard v. Mallard, 771 So.2d 1138 (Fla.2000). As the final judgment is currently configured, it appears to be funding payments- on a *198 loan that will be obtained in the future to buy a home as an investment. We first acknowledge and emphasize that it is often appropriate for alimony to be based on reasonable housing expenses. In this case, however, it appears that the trial court has authorized the Wife to buy a house at some time in the future and to require the Husband to purchase much of that house for her through alimony payments. There is a point at which requiring one spouse to pay off a sizable future mortgage on property purchased as an investment is little different than requiring the spouse to fund a savings account or other similar investment. See id. at 1140 (“Current necessary support rather than the accumulation of capital is the purpose of permanent periodic alimony.”). We do not read Mallard to prohibit alimony that indirectly results in a small savings component to a spouse who is paying the mortgage on a marital home, but if the alimony is used to pay off several hundred thousand dollars of investment in new real property, we are concerned that such an arrangement could become a type of savings alimony that is prohibited by Mallard. This is an issue that we expressly do not decide today, but we encourage the trial court to give it careful consideration when reexamining the alimony on remand.
Affirmed in part, reversed in part, and remanded.
DAVIS and WALLACE, JJ., Concur.