WELLS, Chief Judge.
 

 In these consolidated appeals, Nancy Loftus Quinones appeals from a final judgment of dissolution of marriage, arguing
 
 *1103
 
 that the trial court erred in its alimony and equitable distribution determinations (Case 3D09-8220), and that it erred in its fee awards (Case 3D10-432). We agree that the court below erred in determining the amount of alimony to be paid and reverse that award.
 
 [1]
 
 Based on this determination, we also conclude that the fee award must be reconsidered. However, we find no error in the equitable distribution and affirm that part of the award.
 

 The parties were married in April 1988 and are the parents of two children, a son, who had achieved majority by the time of the divorce, and a teenaged daughter, who at the time of the final judgment had not yet attained majority. The former wife, a high school graduate, was fifty-three years old when the divorce decree was entered. While employed as a flight attendant when the parties were married, the former wife had been unemployed during the parties’ eighteen-year marriage.
 
 [2]
 
 The former husband was fifty-six years old at the time of the divorce and was employed as a major network news correspondent earning over a million dollars a year.
 

 In August 2009, a final judgment dissolving the parties’ marriage was entered. The following January, a fee and cost award was entered. The former wife appeals from the equitable distribution, alimony, and fee awards. We find no error in the equitable distribution devised by the court below. We do, however, agree that the trial court erred in considering the former husband’s voluntary support payments for the parties’ adult son in devising its alimony award and in its order awarding the former wife only a portion of her fees and costs.
 

 The Alimony Award
 

 The former wife argues that she was shortchanged by the trial court’s after tax award of $14,135 a month in permanent periodic alimony. We agree. The testimony was, and the final judgment acknowledges, that at the time of the divorce, the former husband was
 
 netting
 
 a little over $58,000 a month in income from his employment as a news correspondent. The former wife, on the other hand, was unemployed and had been so for over eighteen years. Yet, after recognizing that “[t]he parties [had] lived a fairly luxurious lifestyle during the marriage,” sending their children to private schools, traveling extensively, staying in luxury hotels and dining at expensive restaurants, the court below went on to cut down the expenses listed on the former wife’s financial affidavit to award her $14,135 a month, leaving the former husband with $44,000 to fund his stated $13,000 a month personal expenses. This was due to two things. First, it was due to the trial court’s express consideration of the former husband’s agreement to pay the expenses for the parties’ adult son:
 

 In weighing the needs of the Wife and the ability of the Husband to pay, the court has considered the fact that the Husband has agreed to assume full responsibility for the private college tuition of [the parties’ adult son] (Approximately $52,000.00 plus expenses for the
 
 *1104
 
 next four years.) The Husband is also paying for [the adult son’s] car and car insurance.
 

 Second, it was due to the trial court’s failure to “provide for the needs and necessities of life as they were established during the marriage.”
 
 See
 
 § 61.08(8), Fla. Stat. (2010).
 

 1.
 
 Consideration of Voluntary Payments
 

 As observed in
 
 McLean v. McLean,
 
 652 So.2d 1178, 1181 (Fla. 2d DCA 1995), absent a contractual agreement between the parties, courts are not authorized to consider “voluntary payments” to adult children in calculating amounts available to pay support in dissolution proceedings:
 

 [T]he trial court considered evidence from the husband’s accountant on the extensive cost of sending the ... children to college and graduate school.... Although [the father] may well feel a moral obligation to pay these expenses, he is not legally required to pay them. See
 
 Grapin v. Grapin,
 
 450 So.2d 853 (Fla.1984). Given the parties’ strong commitment to education, they may wish to stipulate concerning these future expenses and the effect they will have on this divorce proceeding,
 
 see Madson v. Madson,
 
 636 So.2d 759 (Fla. 2d DCA 1994), but
 
 neither this court nor the trial court is authorized to add this factor into the divorce equation in the absence of some contractual agreement between the parties. See, e.g., Kilbride v. Kilbride,
 
 172 Mich.App. 421, 432 N.W.2d 324 (1988),
 
 receded from on other grounds sub nom. Heike v. Heike,
 
 198 Mich.App. 289, 497 N.W.2d 220, 221 (1993) (in setting wife’s amount of alimony, trial court did not err in failing to consider husband’s voluntary assumption of obligation to pay for adult child’s college expenses where parties did not independently agree to share such expenses).
 
 Cf. Swigers v. Swigers,
 
 176 Ill.App.3d 795, 126 Ill.Dec. 231, 531 N.E.2d 858 (1988) (where statute authorized trial court to provide for educational expenses of child who has reached majority, it was not error for court to consider husband’s voluntary contributions to child’s education in determining amount of wife’s maintenance award).
 
 See generally
 
 Edward L. Raymond, Jr., Annotation, Divorce: Voluntary Contributions to Child’s Education Expenses as Factor Justifying Modification of Spousal Support Award, 63 A.L.R.4th 436 (1988).
 

 (Emphasis added) (footnote omitted);
 
 see also Grapin v. Grapin,
 
 450 So.2d 853, 854 (Fla.1984) (agreeing “that a trial court may not order post-majority support simply because the child is in college and the divorced parent can afford to pay”);
 
 Rey v. Rey,
 
 598 So.2d 141, 145 (Fla. 5th DCA 1992) (“There is no legal obligation to support the non-dependent adult children of the parties.”).
 

 There is no contractual agreement in this case and it is apparent from the face of the final judgment that in determining the husband’s alimony obligation, the trial court considered that the former husband had assumed full responsibility for the son’s private college tuition, his car and car insurance. In addition to expressly acknowledging the former husband’s agreement to make these payments, as well as the annual cost of these payments, over $52,000 a year, the court below specifically listed this adult child’s expenses as part of the former husband’s monthly expenses in the final judgment thereby reducing the amount available to pay alimony to the former wife. This was improper and requires reversal of the alimony award.
 

 
 *1105
 
 2.
 
 Failure to Consider Standard of Living During the Marriage
 

 In
 
 Canakaris v. Canakaris,
 
 382 So.2d 1197, 1201-02 (Fla.1980), the Florida Supreme Court confirmed that in determining need for the purpose of awarding permanent periodic alimony, the standard of living enjoyed by the parties during the marriage must be taken into consideration:
 

 Permanent periodic alimony is used to provide the needs and the necessities of life to a former spouse
 
 as they have been established by the marriage
 
 of the parties. The two primary elements to be considered when determining permanent periodic alimony are the needs of one spouse for the funds and the ability of the other spouse to provide the necessary funds. The criteria to be used in establishing this need include the parties’ earning ability, age, health, education, the duration of the marriage,
 
 the
 
 standard of living enjoyed during its course, and the value of the parties’ estates.
 

 (Emphasis added). Consideration of standard of living is to ensure that one spouse is not “shortchanged.”
 
 Id.
 
 at 1204.
 

 The obligation to consider standard of living when making an alimony award was codified in section 61.08(2)(a), Florida Statutes (2009) (requiring the court below to consider “[t]he standard of living established during the marriage” when making an alimony award).
 
 [3]
 
 While acknowledging in the final judgment that' the parties “lived a fairly luxurious lifestyle during the marriage” with “residences in Miami and Utah,” that the parties were able to send their children to expensive private schools, and that they traveled extensively staying at “luxury hotels” and dining “at expensive restaurants,” the court below substantially reduced the former wife’s living expenses so as to leave her substantially shortchanged.
 

 Specifically, the former wife maintained she needed $28,000 a month to support the lifestyle she enjoyed during the marriage. On the former husband’s conceded $58,000 a month net income, payment of this amount would leave him with over $30,000 a month for his own support. While the court below was not obligated to accept the former wife’s representation of her needs, it was not free to disregard the parties’ standard of living to reduce her expenses to approximate what the trial court believed — untethered to the parties’ living standard — would be reasonable. In this case, the former wife’s financial affidavit showed that she was then paying $4,000 a month for a rented condominium. At trial, the former wife testified that she intended to purchase a home, after the parties’ Utah home sold, and anticipated a monthly mortgage, taxes and insurance payment of around $6,700. Based on the parties’ standard of living, this was not unreasonable, yet the court below considered decreasing the amount the former wife was then paying for rent in calculating the support award. Similarly, the court below decreased a number of other items detailed on the former wife’s financial affidavit for things such as vacations, grooming, entertainment, household expenses, and meals at home. These cuts eliminated the former wife’s stated ability to engage in activities with her children and their friends as she had in the past. In light of the uncontradicted evidence that the former husband had the ability to pay the amounts requested to maintain the former wife’s standard of living, those
 
 *1106
 
 amounts that the trial court concluded to be valid reflections of the former wife’s pre-dissolution expenses should not have been adjusted.
 

 In sum, the court below determined the former wife’s need without consideration of the standard of living enjoyed by both parties during the marriage. The amount of permanent alimony awarded is, therefore, reversed. On remand, the court below shall consider the amount of alimony to be awarded without consideration of payments made to support the parties’ adult son and upon consideration of the standard of living enjoyed by the parties during the marriage.
 

 The Fee Awards
 

 Section 61.16(1) of the Florida Statutes requires consideration of the financial resources of both parties in determining whether and how much to order one party to pay to the other for fees and costs incurred in a Chapter 61 proceeding. § 61.16(1), Fla. Stat. (2010) (“The court may from time to time, after considering the financial resources of both parties, order a party to pay a reasonable amount for attorney’s fees, suit money, and the cost to the other party of maintaining or defending any proceeding under this chapter....”).
 

 The final order on fees and costs entered below, although twice expressly finding that the former husband has the ability to pay the former wife’s attorneys’ fees and costs, substantially reduced those awards concluding “that the Former Wife took unreasonable positions in the case, particularly as to the amount of alimony she thought she was entitled to and her intransigence as to selling the home in Utah.” In light of our determination herein that the court below erred in its alimony award, and because the record does not demonstrate the type of meritless or vexatious litigation that would affect a fee award, we reverse the fee and costs awards in their entirety for reconsideration in light of this opinion.
 
 [4]
 

 See Ramos v. Lopez,
 
 997 So.2d 1119, 1120 (Fla. 3d DCA 2008) (stating that where a “trial court specifically finds [that a spouse] had engaged in vexatious, excessive, or unnecessary litigation,” it may consider such behavior in awarding attorneys’ fees).
 

 Conclusion
 

 That portion of the final judgment setting the amount of alimony to be paid by
 
 *1107
 
 the former husband is reversed as is the final order on attorneys’ fees and costs. The remainder of the final judgment is affirmed.
 

 Reversed in part, affirmed in part.
 

 [1]
 

 . The trial court additionally imputed income to the former wife upon the younger child finishing high school, in effect lowering the $14,135 net alimony award by an additional $2200 monthly. The analysis outlined herein makes it unnecessary for us to address this point other than to observe that however the trial court fashions its alimony award on remand, because the former husband has the ability to pay, the alimony awarded should allow the former wife to live the lifestyle established prior to the dissolution of marriage.
 

 [2]
 

 . The former wife at one point had obtained a real estate license and sold two houses using referrals from the husband.
 

 [3]
 

 . Currently, in addition to section 61.08(2)(a), section 61.08(8), Florida Statutes (2011) provides, “[pjermanent alimony may be awarded to provide for the needs and necessities of life as they were established during the marriage of the parties[.]”
 

 [4]
 

 . Although the final fees award did not mention the former husband's voluntary payments for the benefit of the parties' adult son, the final judgment did evidence that consideration:
 

 After the court's equitable distribution scheme and alimony awards,
 
 and in consideration of the Husband’s voluntary payment of the older child’s private college tuition and private schooling for the minor child,
 
 it appears the parties are on fairly equal financial footing and that each party should be responsible for his or her own attorney’s fees and costs. It also appears that the difficulty the Wife had in preparing an accurate Financial Affidavit and her intransigence in failing to agree to sell the Utah property have not only caused the unnecessary expenditure of attorney’s fees and costs but has caused the Husband to pay carrying costs for the Utah home for at least 20 extra months. It is highly unlikely the court would be inclined to grant the Wife’s request for attorney's fees and costs. Nonetheless, the court reserves jurisdiction to conduct a hearing to determine whether the Wife is entitled to fees based upon need and ability to pay as well as the other
 
 Rosen
 
 or
 
 Diaz/Smallwood
 
 factors. The Wife is forewarned that if she requests a hearing and if the court finds her request was unreasonable, the court will impose attorney’s fees and costs against her for wasting the court’s and the Husband’s time for such a hearing.
 

 (Emphasis added). As stated above, voluntary payments on behalf of an adult child should not be considered in a dissolution proceeding.
 
 See McLean,
 
 652 So.2d at 1181.