MAY, J.
The former husband appeals a final dissolution of marriage. He argues, among other issues, that the court erred in not imputing income to the former wife in the form of available employment opportunities and interest from investments. We agree with him in part and reverse. The former wife cross-appealed. We affirm the cross-appeal.
The former wife petitioned for dissolution of marriage. She was 59 and he was 60 years old at the time of trial. The former wife has a bachelor’s degree in history and a master’s degree in urban planning. When they met, the former wife was 41 years old and ran her own public relations/marketing consulting firm in Boston. As a result of their relationship, she closed her business and moved to Maine. It took her approximately five years to restart her business.
The former husband worked as general counsel at Central Maine Power at the time of the marriage. In 2000, he was laid off and received a significant amount of severance pay after taxes. With the severance pay, he believed that neither of them would be required to work anymore. He told the former wife that she could close her business and never have to work again. They both retired in 2000.
Upon retirement, the former husband took a year off and then started a consulting business. He was offered a two-year employment contract in 2010 with a base pay of $400,000 per year and a guaranteed bonus of $50,000. At the time of trial, the former husband was in the second year of the contract and had not yet received an extension. The court found that his current income was commensurate with his previous earnings.
The couple enjoyed a comfortable lifestyle. They bought a home on the ocean in Maine, and purchased another home in Vero Beach, Florida. They maintained both residences until the Florida home was sold during the pendency of the dissolution proceeding.
Their major liquid assets included investment and retirement accounts. The former husband testified that they were able to live on their investment income, and used his salary for special things. They had no marital liabilities.
During trial, a certified vocational evaluator testified about the former wife’s wage-earning capacity. The evaluator relied on state agency wage data, statistics on the internet, the former wife’s financial affidavit, answers to interrogatories, the mediation outline, and the former wife’s deposition transcript. Even though the former wife had not worked for eight years, the evaluator testified that the former wife could take a one-day class to learn Microsoft Office and another class to get up-to-speed with social media. The evaluator considered her employable, and identified jobs in public relations, social services, and fundraising for nonprofits and universities, which she opined could earn former wife between $40,000 and $50,000 a year.
*897 After considering the lifestyle studies and findings of the parties’ accountants, the court found that the former husband and wife needed $13,840 and $10,300 monthly after taxes, respectively, to maintain their lifestyles. Each party received bank, securities, and retirement accounts of equal value, in addition to personal property distributed according to their agreement, and a one-half share of the sale proceeds of the Maine home. The court assumed that each party could purchase a home from their portion of sale proceeds of the Maine home.[1] The court also estimated that the former wife would have over $835,000 in investment assets from which to receive income. The parties stipulated to a 4.5% rate of return on their assets.
As to the former wife’s employability, the court found that she lacked the skills necessary for most of the jobs identified by the vocational evaluator. As a result, based on the length of the marriage, the marital lifestyle, and other relevant factors, the court awarded the former wife permanent periodic alimony of $11,648 per month, starting July 2012. The former wife was not required to return to work. The court found that the former husband was capable of covering both of their monetary needs and would still have $3,000 left each month. The court also awarded the former wife a lump sum alimony payment.
Based on the equitable distribution and permanent periodic alimony received by the former wife, the court denied the former wife’s request for attorney’s fees and costs. The court denied the former husband’s verified motion for rehearing. From the final judgment, the former husband appeals, and the former wife cross-appeals.
The former husband argues that, not only was the former wife employable, there were jobs for which she was qualified in both Maine and Florida. The former husband contends that his promise that she would never need to work again was only good for the duration of the marriage. He further argues that the court’s finding that jobs were not realistically available to the former wife was not supported by competent, substantial evidence.
The former wife responds that the former husband failed to prove that she is employable and that jobs were available to her. She maintains that equity supported the court’s decision because she closed her business at the former husband’s request and promise that she would never have to work again.
We review imputation of income based on whether it is supported by competent, substantial evidence. Marshall-Beasley v. Beasley, 77 So.3d 751, 755 (Fla. 4th DCA 2011).
“ ‘[T]he amount of income a spouse may be able to earn is a factor the court should consider in determining an alimony award.’” Green v. Green, 126 So.3d 1112, 1114 (Fla. 4th DCA 2012) (quoting Shrove v. Shrove, 724 So.2d 679, 682 (Fla. 4th DCA 1999)) (emphasis in original). “ ‘A court may impute income where a party is willfully earning less and the party has the capability to earn more by the use of his [or her] best efforts.’ ” Marshall-Beasley, 77 So.3d at 756 (quot *898 ing Schram v. Schram, 932 So.2d 245, 249 (Fla. 4th DCA 2005)). The court should consider the wife’s work history, her occupational qualifications, and the prevailing earnings in the community for the type of jobs for which the wife is qualified. Zarycki-Weig v. Weig, 25 So.Sd 573, 575 (Fla. 4th DCA 2009).
Here, the couple had been married for seventeen years. The former wife was unemployed when the petition for dissolution was filed. To impute a specific amount of income, it is unnecessary to prove that an employer would actually hire the spouse. Middleton v. Middleton, 79 So.3d 836, 836-37 (Fla. 5th DCA 2012). Because the former wife admitted that she does not intend to look for a job, and expert testimony established that she qualified for the available jobs, her unemployment was self-imposed, and the court erred in not imputing income to her.
While the former wife might have relied on the promise she would not have to work while the couple was married, that promise cannot be the only factor considered by the court in determining an alimony award. Welch v. Welch, 951 So.2d 1017, 1019-20 (Fla. 5th DCA 2007).
The former husband also argues that the court erred in not imputing income generated from the estimated sale proceeds of the Maine home, funds in IRA retirement accounts, and other non-marital assets. The former wife responds that income cannot be imputed on the Maine home because it was not income-producing. She also argues that the court correctly did not consider her IRA account because the former husband’s IRA accounts were not included as income-producing assets to him.
We review a court’s determination of whether certain assets should be available sources of income for an abuse of discretion. See Niederman v. Niederman, 60 So.3d 544, 546 (Fla. 4th DCA 2011).
It is sometimes difficult to discern whether income from the sale of a former marital home produces an income-generating asset to the spouse. See, e.g., Levine v. Levine, 29 So.3d 464, 465 (Fla. 4th DCA 2010) (May, J., concurring). When one spouse is assigned an asset and plans to use the proceeds to purchase a home, the issue becomes even more blurred. See Suit v. Suit, 48 So.3d 195, 197 (Fla. 2d DCA 2010).
In Suit, the former wife was awarded liquid assets and planned to use a significant portion of them to purchase a home. Id. The Second District recognized the blurred lines of this issue and remanded the case to the court to consider additional evidence and make specific findings regarding the former wife’s intent to purchase a home and the effect it would have on her investment assets. Id.
Here, the former wife had possession of the Maine home until sold. The court awarded each spouse one-half of the sale proceeds to purchase their respective new homes. Even though the former wife had not purchased a home, she claimed homeowners’ association fees as part of her living expenses.
While the home is occupied by the former wife, it is appropriate not to impute income. See Levine, 29 So.3d at 464-65. However, on remand, if the Maine home has been sold, the court should consider whether the former wife purchased a home with the sale proceeds. If she did, the court should consider whether there are funds from the sale that were not used to purchase the new home, which can now be considered investment assets so that the alimony amount reflects the potential interest income of the former wife. The court should also consider whether the for *899 mer wife is still required to pay homeowners’ association fees. Suit, 48 So.3d at 197.
In considering an alimony award, a court must consider “all sources of income available to either party.” § 61.08(2)(i), Fla. Stat. (2011). “‘Income’ means any form of payment to an individual, regardless of source, including, but not limited to: wages, salary, ... annuity and retirement benefits, pensions, dividends, [and] interest.” § 61.046(8), Fla. Stat. (2011). This includes payments received from IRA retirement accounts. Niederman, 60 So.3d at 548.
In Niederman, we held that the court did not err in including the IRA funds of a former wife, who was in her mid-fífties, as a source of income. Id. at 546. Here, the former wife turned 59 before the trial. By the time the court entered its final judgment, she was just two days shy of 59½ years old and would not have suffered any tax penalty from withdrawing funds from her IRA retirement accounts when the court-ordered alimony payments began in July 2012. Id. at 547. The retirement funds at a stipulated rate of return of 4.5% will generate income for the former wife’s support. This should have been included in the court’s calculation of the former wife’s need for alimony.
Similarly, if the former wife’s non-marital bank account is interest-generating, it falls within the definition of income under section 61.046(8), and should be included in the calculation of the former wife’s income. She may not increase her alimony by shielding the interest accrued in the non-marital bank account from her income calculation. Mallard v. Mallard, 771 So.2d 1138, 1141 (Fla.2000). Correspondingly, the court should also include any of the former husband’s non-marital portions of his IRA accounts and non-marital bank accounts in calculating his total income. Niederman, 60 So.3d at 550.
For these reasons, we reverse and remand this case for recalculation of the alimony. We find no merit in the other issues raised by the former husband nor by the former wife in her cross-appeal.

Reversed and Remanded.

LEVINE, J., concurs.
WARNER, J., concurs in part and dissents in part with opinion.

. Before the court issued the final judgment, the former husband filed an amended motion for reconsideration based on newly discovered evidence. He alleged a change in his monthly income to a base salary of $20,000 per month in 2012 with the possibility of a performance bonus. The court denied the motion, but advised the former husband to file a supplemental petition for modification, if necessary, upon the entry of the final judgment.