TAYLOR, J.
The husband appeals a final judgment of dissolution of marriage, arguing that the trial court erred in denying his request for permanent, periodic alimony. We affirm.
The wife petitioned for dissolution after 17 years of marriage. The husband requested permanent periodic alimony, citing the length of the marriage, the disparity in the parties’ incomes, his need, and the wife’s ability to pay. By statute, the marriage was presumptively a long-term marriage. § 61.08(4), Fla. Stat. (2013) (“For purposes of determining alimony, there is a rebuttable presumption that a ... long-term marriage is a marriage having a duration of 17 years or greater.”).
At the time of trial, the husband was 63 years old and the wife was 55. Throughout most of his adult life, the husband worked in his own landscaping business. However, after suffering multiple work-related injuries and fracturing his back, he stopped working and began receiving Social Security Disability benefits in the amount of $1,535 per month for himself and $750.00 for the minor daughter.
The husband’s total net worth, including the marital assets and liabilities distributed to him, is over $1.3 million. His net worth includes significant non-marital assets worth about $980,000. The husband’s net worth from real estate and financial holdings is over $1.2 million, and includes the following significant assets and liabilities:
Assets
Husband’s IRA — $190,827
Husband’s Deerfield Beach house— $195,000
North Carolina Cabin — $175,000
Four North Carolina lots — $300,000
Proceeds from Sale of Husband’s Business — $115,000
Annuity — $101,000
US-1 Lot — $100,740
Legacy Stock — $11,500
Proceeds, from Sale of Jacksonville Home — $25,000
Husband’s Current Residence — $273,000
Liabilities and Contingent Liabilities
'Mortgage on Husband’s Current Residence — $240,000
Loans on US-1 Lot (Contingent)— $40,000
Additionally, the equitable distribution scheme required the wife to make an equalizing payment to the husband in the amount of $68,762,
The wife has an MBA, is employed by a bank, and earns an average gross income of $10,042 per month. The wife’s net worth is over $600,000 and consists largely of the equity in the marital home, which was distributed to her. The wife’s significant assets and, liabilities are as follows:
Assets
Marital Home — $935,000
Wife’s IRA — $88,000
Legacy Stock — $11,500
Proceeds from Sale of Husband’s Business — $115,000
Liabilities
Mortgage on Marital Home — $511,200
Credit Card Debt — $38,000
At the final hearing, the husband requested permanent periodic alimony in the amount of $2,500 per month. He argued that he had the need and the wife had the ability to pay. In opening statements, the husband’s counsel suggested that the court could impute a 3% rate of return to the *1042 husband’s IRA, which would result in $500 per month in income to the husband.
In the husband’s financial affidavit, he claimed monthly expenses of $2,790. At the time he filed his financial affidavit, however, he was living in the guest house connected to the marital home and was not paying any of the expenses for his current residence, which was an additional home the parties owned during the marriage. The husband testified that the expenses associated with his current residence were over $1,200 per month, including $900 for the mortgage, $175-$185 for electricity, $60 for water, and about $110 for the phone. The husband further testified that he previously had health insurance through his wife, but must now pay his own health insurance in the amount of $470 per month. The husband’s expenses for his current home and for his health insurance are over and above the expenses listed on his financial affidavit.
The husband testified that his North Carolina cabin is a seasonal rental that he often allowed friends and family to use in exchange for helping with the house. He explained that he has not earned any income on the cabin over and above the expenses on the property.
The husband testified that he rented out his Deerfield Beach property for $1,000 a month. He began renting the property after the temporary relief hearing in March 2014, and continued to rent it until the month before trial, when the tenant moved out. The husband asserted that he made only $285 in net rental income after the expenses on the property, which include taxes, insurance, water, and lawn service.
The husband has not made any attempt to sell his four vacant lots in North Carolina, which are worth a total of $300,000. He testified that he had no plans to build homes on the lots and that he purchased them for tax reasons.
In the wife’s financial affidavit, she claimed monthly expenses of $6,859, including a $2,900 mortgage payment on the marital home. However, the wife acknowledged that her financial affidavit included expenses that no longer exist, including expenses related to the husband’s current residence and other expenses the husband was currently paying.
In the final judgment, the court denied the husband’s request for alimony. The court found that the husband had the ability to earn rental income from the Deer-field Beach property and the North Carolina cabin. The court also found that the husband had “investment income from his annuity, an IRA account, bank stock, and proceeds from the sale of his [business].” The court imputed income to the husband based on his real estate and financial assets, stating:
No evidence was presented as to the likely income to be earned from his real estate and financial assets which have a present value of $1,214,067. A conservative investment return of 3% per annum would produce income of $36,422 annually without invading the principal. Together with his SSDIB his gross monthly income is imputed to be $4,570. His only proven debt is the mortgage on his [current] home of $240,000. The Husband chooses not to seek income from many of his assets.
The court also found: “The evidence of the Husband’s expenses is insufficient to show a need in excess of his imputed income. He testified to a few expenses which are less than his income.” The court did not make any specific findings regarding the wife’s ability to pay.
The husband moved for rehearing on the alimony issue, arguing that he proved his need and that the trial court’s imputation *1043 of income to him was error. The court denied the motion for rehearing, and the husband appealed.
On appeal, the husband argues that the trial court erred in denying his request for permanent alimony where he demonstrated his need and the wife’s ability to pay. The husband concedes that imputing investment income to him from his liquid assets was proper, but argues that the trial court erred by imputing investment income to him from his non-liquid assets. The husband complains that the trial court’s ruling requires him to liquidate his assets and invest the proceeds to earn a 3% return.
The wife responds that the trial court did not abuse its discretion in denying the husband’s claim for permanent alimony, as the judgment demonstrated that the husband “was in a financial position to maintain the necessities of life as they were established by the marriage without reducing his marital or non-marital assets.”
A trial court’s decision on whether to award permanent alimony is reviewed for an abuse of discretion. Hornyak v. Hornyak, 48 So.3d 858, 861 (Fla. 4th DCA 2010). Similarly, we review a court’s determination of whether certain assets should be available sources of income for an abuse of discretion. Adelberg v. Adelberg, 142 So.3d 895, 898 (Fla. 4th DCA 2014).
Permanent periodic alimony is intended “to provide the needs and the necessities of life to a former spouse as they have been established by the marriage of the parties.” Canakaris v. Canakaris, 382 So.2d 1197, 1201 (Fla.1980). The primary factors for a court to consider when awarding alimony are the requesting spouse’s need and the other spouse’s ability to pay. Addie v. Coale, 120 So.3d 44, 47 (Fla. 4th DCA 2013); Zeballos v. Zeballos, 951 So.2d 972, 974 (Fla. 4th DCA 2007). There is a rebuttable presumption that permanent alimony is appropriate after a long-term marriage.. Fichtel v. Fichtel, 141 So.3d 593, 595 (Fla. 4th DCA 2014).
The criteria to be used in establishing a spouse’s need for alimony “include the parties’ earning ability, age, health, education, the duration of the marriage, the standard of living enjoyed during its course, and the value of the parties’ estates.” Canakaris, 382 So.2d at 1201-02 (emphasis added). The parties’ standard of living during the marriage is not, however, a “super-factor” to control over the other considerations. Marshall-Beasley v. Beasley, 77 So.3d 751, 757 (Fla. 4th DCA 2011). The purpose of permanent alimony “is not to divide future income to establish financial equality.” Rosecan v. Springer, 845 So.2d 927, 929 (Fla. 4th DCA 2003). “Disparity in income alone does not justify an award of permanent periodic alimony.” Id.
A court should not require a spouse in need of alimony to deplete or invade capital assets to maintain his or her standard of living. Hanks v. Hanks, 553 So.2d 340, 343 (Fla. 4th DCA 1989). However, in ruling on a request for alimony, a court must consider “all sources of income available to either party, including income available to either party through investments of any asset held by that party.” § 61.08(2)(i), Fla. Stat. (2014). “The court would abuse its discretion not to take into account evidence presented that shows that a spouse has a substantial source of income available but refuses to access it.” Niederman v. Niederman, 60 So.3d 544, 549 (Fla. 4th DCA 2011).
It is well-settled that a court should impute income that could reasonably be earned on a former spouse’s liquid assets. Rosecan v. Springer, 985 So.2d *1044 607, 609 (Fla. 4th DCA 2008); Greenberg v. Greenberg, 793 So.2d 52, 55 (Fla. 4th DCA 2001). “When a party receives an asset in equitable distribution that will result in immediate investment income,” that income should not be excluded for purposes of determining alimony. McLean, v. McLean, 652 So.2d 1178, 1181 (Fla. 2d DCA 1995). Moreover, “when a spouse with underearning investments has the ability to generate additional earnings— without risk of loss or depletion of principal — but fails to do so, it is fair for a court to impute a more reasonable rate of return to the underearning assets, comparable to a prudent use of investment capital.” Rosecan, 985 So.2d at 610 (quoting Overbay v. Overbay, 376 N.J.Super. 99, 869 A.2d 435, 443 (2005)).
The law is not clear, however, on the issue of whether a trial court should impute income based on non-liquid assets. We have held that a trial court should not impute income from the home that a spouse occupies after the divorce. See Levine v. Levine, 29 So.3d 464, 464-65 (Fla. 4th DCA 2010) (“The former wife presently lives in the marital home with her children. The trial court correctly determined that income cannot reasonably be imputed from this asset at this time.”); Adelberg, 142 So.3d at 898 (‘While the home is occupied by the former wife, it is appropriate not to impute income,”). Moreover, a Second District case suggests, but does not directly hold, that a party should not be required to change the character of an asset to maintain the standard of living established during the marriage. See Suit v. Suit, 48 So.3d 195, 197 (Fla. 2d DCA 2010) (“In this case, the Wife does not need to invade the character of the bond fund or to change the character of this asset in order to have a significant annual income.”).
Judge May’s concurrence in Levine illustrates the issue, explaining that “no Florida case has yet held that a non-liquid asset must have income imputed to it.” Levine, 29 So.3d at 465 (May, J., concurring). But Judge May expressed concern that a spouse could strategically maneuver to receive non-liquid assets in equitable distribution so as to benefit his or her claim for alimony:
I write simply to call attention to the issue raised in the briefs and in oral argument that was not specifically made to the trial court: whether a spouse can request a non-liquid asset in equitable distribution, leaving the liquid assets to the other spouse, thereby generating income and ability to pay for one spouse while increasing the need for alimony of the spouse with the non-liquid asset. It would seem that this could result in strategic maneuvering to the benefit of the spouse seeking alimony and the detriment of the one who will be required to pay.
While this case does not present a factual situation necessitating an analysis of this strategy, the future may yield a factual scenario that does. For example, with marital assets of $1,000,000, a non-employed spouse requests a $500,000 non-liquid asset (the marital residence); the other employed spouse receives an income-producing $500,000 asset. The non-employed spouse then asks for alimony and claims to have no income. The employed spouse’s income is increased because of the liquid asset and therefore has a greater ability to pay while the non-employed spouse with the non-liquid asset claims the greater need for alimony.
Florida case law supports the imputation of income to liquid assets. McLean v. McLean, 652 So.2d 1178, 1181 (Fla. 2d DCA 1995). “When a party receives an asset in equitable distribution that will *1045 result in immediate investment income, we see no reason for that income to be excluded from consideration under section 61.08(2)(g).” Id. at 1181. Contrastingly, no Florida case has yet held that a non-liquid asset must have income imputed to it. But, that day may come.
As the trial court found, we did not order the former wife to sell the home, nevertheless she now possesses a non-liquid asset of $925,000 without restrictions to which no income is imputed.... Wisely, the trial court reserved jurisdiction to consider the imputation of income to this asset at a later time. But that is a question for another day.
Id. (footnote omitted).
In this case, the trial court did not abuse its discretion in denying the husband’s request for permanent periodic alimony. Although the trial court should not have imputed income to the husband based on his current residence (which cannot be expected to produce income so long as he lives there), the trial court otherwise did not abuse its discretion in imputing income to the husband from" his real estate and financial holdings, even though those assets included non-liquid assets. Canakaris instructs that a trial court may consider the value of a party’s estate in determining the party’s need for alimony. For 'purposes of establishing a party’s need, the Canakaris decision does not limit a trial court’s consideration of a party’s financial situation to the party’s liquid estate.
Likewise, section 61.08(2)(i) requires the court to consider income available to a party through investments of any assets, not merely liquid assets. Here, the trial court properly imputed a reasonable rate of return of 3% to the husband’s real estate and financial assets, which had a present value of about $1.2 million. While the court should not have imputed income based on the equity in the husband’s residence, this equity (about $33,000) represented only a small portion of the husband’s net worth and' accounted for less than $1,000 of the $36,422 in annual income that the trial court imputed to the husband. Accordingly, we consider the trial court’s imputation of income from the equity in the husband’s current residence to be harmless error under the facts of this case.
Discretion is abused only where no reasonable person would take the view adopted by the trial court. Canakaris, 382 So.2d at 1203. The Canakaris reasonableness standard is flexible enough to allow for the trial court to consider a party’s non-liquid assets for purposes of imputing income. A contrary rule would simply encourage spouses with substantial non-liquid assets to engage in strategic gamesmanship, such as delaying the liquidation of their assets, for purposes of advancing or defending alimony claims. Notably, the trial court’s imputation of income applied only to the husband’s financial and real estate assets, which are typical investment assets. The trial court’s ruling did not require the husband to liquidate any tangible personal property. Likewise, the court’s ruling did not require the husband to invade the principal of his assets, but rather imputed a reasonable return to the husband’s net real estate and financial holdings.
The husband complains that the trial court’s ruling would require him to liquidate assets, but Rosecan suggests that a spouse should be required to change the character of an underperforming investment asset. As the trial court noted, the husband “chooses not to seek income from many of his assets.” For example, the husband chose to keep empty lots worth $300,000 that produce no income. It would be unfair to require the wife, whose net worth is about half of the husband’s *1046 net worth, to use her post-dissolution income to support the husband simply because he chooses not to use his assets in a manner that would produce the income necessary to support him. To the extent the husband cannot obtain adequate rental income to support himself, he could easily sell his real estate holdings and — without invading the principal — reinvest those assets at a reasonable rate of return so as to earn a level of income that would meet his needs.
Under the Canakaris standard, we cannot say that no reasonable person would have denied the husband’s request for alimony.
Accordingly, we affirm the final judgment of dissolution of marriage.

Affirmed.

MAY and CONNER, JJ., concur.