788 So.2d 290 (2000)
Joseph Michael ROBBIE, Appellant,
v.
Dwyn Daniels ROBBIE, Appellee.
Dwyn Daniels Robbie, Appellant,
v.
Joseph Michael Robbie, Appellee.
Nos. 4D99-2199, 4D99-2200.
District Court of Appeal of Florida, Fourth District.
December 6, 2000.
*291 Betsy Warwick of Alice E. Warwick, P.A., Coral Gables, for Joseph Michael Robbie.
Shelly M. Mitchell, Fort Lauderdale, for Dwyn Daniels Robbie.
FARMER, J.
These are yet further proceedings in the divorce of these parties. In the first appeal from the final judgment of dissolution of marriage, we reversed the trial court's determination that the increase in value of Miami Sports Corporation was not a marital asset and remanded the case for the distribution of the enhancement in value during the marriage. Robbie v. Robbie, 654 So.2d 616 (Fla. 4th DCA 1995) (Robbie I). The proceedings on remand next resulted in an appeal from punishment the trial judge imposed on the husband for failing to comply with certain orders. We affirmed, concluding (among other things) that an award of temporary alimony was erroneous but should have been obeyed by the husband until set aside. Robbie v. Robbie, 726 So.2d 817 (Fla. 4th DCA 1999) (Robbie II).[1] We now have in hand appeals *292 by both parties from the present judgment equitably distributing the enhanced value in the nonmarital asset instructed by Robbie I, as well as an appeal from an order dismissing the wife's petition to modify alimony.[2]
Initially, we reject the husband's challenge to our previous decision that the entire increase in value of Miami Sports Corporation during the marriage constitutes marital property, as well as his contention that only the discrete part of any enhancement directly attributable to the husband's work efforts should have been deemed marital. Essentially husband's argument comes down to an assertion that we should not be governed by the law of the case because Robbie I was both wrong and unfair. Even if that assertion were true, it is an insufficient reason to disregard the felicitous principle embraced by the law of the case. See Strazzulla v. Hendrick, 177 So.2d 1 (Fla.1965) (holding that appellate court should reconsider issue previously decided on former appeal only as matter of grace, not as matter of right, and that exception to general rule binding parties to law of case should not be made except in unusual circumstances for most cogent reasons and only where manifest injustice will result from rigid adherence to rule). Issues once settled after full opportunity to contest them should stay at rest. When no special reason is presented to unsettle the settled, it should remain thus resolved. Strazzulla, 177 So.2d at 4 (exception to rule of law of case should never be allowed when it would amount to nothing more than second appeal on question determined in first appeal). As the court said in Zdanok v. Glidden Company, 327 F.2d 944 (2nd Cir. 1964):
"where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again. Perhaps the `good sense' of which Judge Hand spoke comes down to a calculus of the relative unseemliness of a court's altering a legal ruling as to the same litigants, with the danger that this may reflect only a change in the membership of the tribunal...."
327 F.2d at 953; see also Higgins v. California Prune & Apricot Grower Inc., 3 F.2d 896, 898 (2nd Cir.1924) ("the `law of the case' does not rigidly bind a court to its former decisions, but is only addressed to its good sense"); and Strazzulla, 177 So.2d at 4. Because the husband has failed to show unusual circumstances with cogent reasons that manifest injustice will result if we do not recede from our former decision, we thus find no error in the trial court proceeding to do what our earlier decision required it to do: determine how the enhancement should be distributed to the parties.
The wife argues that the trial court erred in failing to divide the increase equally, instead giving 65% to him and 35% to her. We agree. Section 61.075(1) provides that "in distributing the marital assets and liabilities between the parties, the court must begin with the premise that the distribution should be equal, unless there is a justification for an unequal distribution based on all relevant factors...." [e.s.] Of all the relevant statutory factors that might justify an unequal distribution, only subsection (g) is even arguably applicable. That subsection provides that
"[t]he contribution of each spouse to the acquisition, enhancement, and production of income or the improvement of, or the incurring of liabilities to, both the *293 marital assets and the nonmarital assets of the parties"
is a factor that the court must consider in justifying an unequal distribution.
In this case the undisputed evidence is that the husband and wife did not do much (if anything) that directly affected the success of Miami Sports Corporation.[3] Indeed the husband is emphatic that all the witnesses attributed the success of the Miami Dolphins[4] to the efforts of husband's father, rather than to him. Equally, he adds, the wife did little or nothing directly contributing to the success of this NFL franchise. While these assertions refer to whether the increase should have been treated as marital property at all, they nevertheless also indicate the absence of any approved statutory basis to justify an unequal distribution of it.
In 1993 the Legislature made an important alteration to the equitable distribution statute.[5] The 1993 amendment to section 61.075(1) makes equal distribution of marital property the norm.[6] The purpose of this amendment was to add a clear rule with a strong presumption in favor of equal distribution of marital property and thereby to bring determinacy and predictability to the marital property division. This rule is not to be casually dispensed with by simply saying "the unequal division in this case is more just and equitable." The statute's specification of factors bearing on unequal distribution represents legal principles narrowing the range of discretion of the judge in dividing marital property. Unequal distributions must find their authority in specific facts relating to the statutory factors rather than in generalized and indeterminate notions of equity.[7]See Harreld v. Harreld, 682 So.2d 635 (Fla. 2d DCA 1996) (to justify departure from statutory instruction that distribution of marital assets be equal, court must analyze all relevant factors, including statutory factors, and must provide legally sufficient factual basis for distribution in final *294 judgment). There being no evidence that would justify an unequal division, we therefore conclude that the distribution of the marital share of the enhancement in this case must be equal.
We also find error in the trial court's failure to award interest on the distribution for the period after January 1, 1999, until the date of judgment. We agree with the wife that the failure to allow for interest for the entire period is inexplicable. If she is to have any at all, the interest should run for the complete span until the date of the award. On remand, therefore, the trial court shall amend its judgment to distribute this marital property equally between the parties, adjusting the figures accordingly, and shall award interest through May 25, 1999, the original date of judgment, with post judgment interest to accrue from that date. As thus amended, the judgment of distribution of the enhancement in value of this marital asset is affirmed.
In closing, we reject the wife's argument that the court erred in summarily dismissing her petition for modification of alimony. Our decision in Robbie I was intended to make clear that the final judgement then under review put to rest any and all claims to alimony, not just a claim for interim alimony while a post judgment petition for modification was awaiting adjudication. As we said in Robbie II:
"Our approval of the final judgment's provisions with respect to alimony, including the denial of permanent alimony, constituted the law of the case. On remand the trial court was bound by the affirmed determination that the wife had not proved that she was entitled to support alimony beyond the limited bridge-the-gap alimony awarded. Thus, the wife's motion for temporary support, which merely alleged that she was in need of support and the husband had the ability to pay, would have required the trial court to make factual findings contrary to the determinations in the final judgment."
726 So.2d at 820. The subject of alimony is thus closed. See Strazzulla, 177 So.2d at 4.
KLEIN and TAYLOR, JJ., concur.
NOTES
[1] There have been several other appeals as well. See Robbie v. Robbie, 591 So.2d 1006 (Fla. 4th DCA 1991) (reversing award of temporary alimony); Robbie v. Robbie, 683 So.2d 1131 (Fla. 4th DCA 1996) (concluding that husband could be held in contempt for failing to pay judgment for wife's attorney's fees). We also dismissed appeals by the husband in case nos. 97-1954 and 97-1995 upon motion of wife.
[2] We hereby consolidate the appeals of both parties for purposes of this opinion.
[3] He had a management position but, as he characterizes it through his witnesses, did little more than carry out the policies initiated by others. She testified that she participated in certain functions that we would describe as "business-social" which contributed to the success of the corporation.
[4] This is the most well-known asset of Miami Sports Corporation but there were other assets as well.
[5] See Ch. 93-188, § 3, Laws of Fla.
[6] This is unlike the state of the law that existed when we said in Tronconi v. Tronconi, 425 So.2d 547, 549 (Fla. 4th DCA 1982), that "an `equitable' distribution does not require an `equal' distribution. The two words are not synonymous." The 1993 statutory amendment to section 61.075(1) adding the words "the court must begin with the premise that the distribution should be equal, unless there is a justification for an unequal distribution" has the effect of "repealing" our Tronconi observation.
[7] We do not read the last factor in the statutory listing as providing general discretion to trial judges to set aside the strong presumption of equal distribution. See § 61.075(1)(j) ("any other factors necessary to do equity and justice between the parties"). Because the factors in subsections (1)(a)-(j) constitute principles to designed to narrow judicial discretion in the division of marital property, subsection (j) merely means that the statutory list of factors is not exhaustive. If subsection (j) were read as a grant of blanket discretion to ignore the overall meaning of the 1993 amendment and distribute marital property unequally simply out of generalized notions of justice and equity, the essential purpose of the amendment would be defeated. For that was exactly the state of the law that existed before the amendment was added. To avoid a destruction of the essential purpose of the amendment, when a court seeks to justify an unequal distribution based on an unenumerated factor, that ad hoc factor will have to bear a close affinity with those enumerated in the statutei.e., the factor employed must be ejusdem generis with the enumerated ones.