WARNER, J.
 

 In determining the issue of alimony in this dissolution of marriage proceeding, the trial court imputed income to the former wife from annuities and Individual Retirement Accounts (IRAs) which were distributed to her as equitable distribution, concluding that IRS provisions permitted her to withdraw monies from IRAs without penalty through a Regulation 72(t) withdrawal plan. The wife contends that this was error. We disagree, holding that the trial court did not abuse its discretion in considering the IRAs to be available sources of income to the wife. Both parties raise several other issues in her appeal and his cross-appeal. We affirm as to all issues raised and write to address the imputation of income from the IRA and annuity accounts.
 

 The husband and wife filed for divorce after nineteen years of marriage. At the time of final judgment the wife was 53 and the husband was 54. It is undisputed that the husband is a cardiac interventionist with a yearly income before taxes in the neighborhood of half a million dollars. The wife had not worked full time since 1987, though she has recently worked part time as a diabetes educator earning $35,000 per year. The marital estate was approximately $7.1 million. They had lived a “moderately lavish” lifestyle, but within their means. The court awarded each party approximately 3.5 million dollars in assets as equitable distribution.
 

 The court awarded the former husband $3,498,946, which included the marital home, his medical practice and various business interests. It awarded the former wife $3,605,826. Of that amount, $2,759,744 constituted IRAs and annuities. She received $729,334 in non-retirement assets including CDs and securities. She also maintained $313,000 of non-marital assets.
 

 The court found the wife was entitled to permanent periodic alimony. It determined that her net monthly income from her part-time employment was $2,500 and that she should not be required to work full time. The court found her net monthly need to be $15,000. That left her with a shortfall of $12,500 monthly. The court determined that she was entitled to $5,000 in alimony, based upon the court’s conclusion that her annuities and IRAs could earn $9,000 monthly and could be withdrawn for her support without penalty. In addition, the court made the husband responsible for the transaction fees and costs
 
 *547
 
 incurred by the wife for withdrawals up to $7,500 per month.
 

 The court based its findings on the use of the IRA for support of the wife on the testimony of the husband’s accountant. Under existing law, if funds are removed from an IRA or annuity before the participant is 59 1/2 years old, there is a 10% extra penalty tax. However, IRC s. 72(t) provides taxpayers a way to withdraw monies without penalty from annuities or IRAs by allowing substantially equal payments over a period of time of at least five years based on the life expectancy of the participant and a reasonable rate of return. The accountant testified that the wife (who at that time was 58) could withdraw these equal payments for 6 1/2 years until she reaches age 59 1/2, when she could access all of the funds without penalty. Based on the wife’s 31-year life expectancy and a reasonable interest rate of 5% applied to the principal in the fund, the wife could withdraw up to $14,500 per month from the IRAs and annuities. Because the IRAs and annuities had historical earnings from 6% to 9%, the principal would continue to grow at some amount even with the withdrawals figured at a 5% return.
 

 In imputing an amount that the wife could draw on the IRA and annuity accounts as a source of support for the wife, the court accepted the husband’s argument that requiring the wife to use the IRAs and annuities for support was authorized by this court’s opinion in
 
 Donoff v. Donoff,
 
 940 So.2d 1221 (Fla. 4th DCA 2006), as well as the Florida Supreme Court’s opinion in
 
 Mallard v. Mallard,
 
 771 So.2d 1138 (Fla.2000). Failure to include the income from the annuities as support for the wife, and instead requiring the husband to pay additional alimony, would constitute an impermissible “savings component” in the alimony.
 

 The wife challenges the trial court’s inclusion of IRA income in its determination of her ability to support herself. She contends that the court erred as a matter of law in concluding that income from her IRAs and annuities could be imputed to her. We hold, however, that income from an IRA through a Regulation 72(t) withdrawal plan can be imputed to a spouse for purposes of determining an alimony obligation where the court can reasonably conclude that the principal of the IRA will not be invaded for the purpose of support.
 

 Section 61.08(2), Florida Statutes (2007), establishes the criteria to be considered by a court for an award of alimony to a spouse.
 

 (2) In determining a proper award of alimony or maintenance, the court shall consider all relevant economic factors, including but not limited to:
 

 [[Image here]]
 

 (d) The financial resources of each party, the nonmarital and the marital assets and liabilities distributed to each.
 

 [[Image here]]
 

 (g) All sources of income available to either party.
 

 The court may consider any other factor necessary to do equity and justice between the parties.
 

 Chapter 61 also contains a definition of “income” in section 61.046(8), Florida Statutes (2007):
 

 (8) “Income” means any form of payment to an individual, regardless of source, including, but not limited to: wages, salary, commissions and bonuses, compensation as an independent contractor, worker’s compensation, disability benefits, annuity and retirement benefits, pensions, dividends, interest, royalties, trusts, and any other pay-
 
 *548
 
 merits, made by any person, private entity, federal or state government, or any unit of local government.
 

 Taking these provisions together, a court must consider the financial resources distributed to the parties through the dissolution and all sources of income available, which includes payments available from annuities and retirement benefits. In this case that includes the income available from the IRAs and annuities.
 

 The wife contends, however, that the income from the investments is not “available” to her prior to her attaining 59 1/2 years of age, when it can be withdrawn without penalty. She contends that it should constitute “available” income only when it is actually in a “pay” status. And she argues that because it can be reached only by requiring her to set up a section 72(t) payment plan, it is not available income.
 

 We disagree that the court cannot look to the substantial IRA and annuity accounts it distributed to the wife as equitable distribution as a source of income for the purposes of determining alimony. First, the statute requires the court to look at the financial resources distributed to the party. § 61.08(2)(d), Fla. Stat. Second, “available” means “obtainable” or “accessible.” Merriam-Webster’s Online Dictionary, http://www.merriam-webster.com/ dictionary/available (last accessed April 6, 2011). The payments from the IRA and annuity accounts are readily accessible through the 72(t) payment plan.
 

 “A court should impute income that could
 
 reasonably
 
 be projected on a former spouse’s liquid assets.”
 
 Rosecan v. Springer,
 
 985 So.2d 607, 609 (Fla. 4th DCA 2008) (citing
 
 Greenberg v. Greenberg,
 
 793 So.2d 52, 55 (Fla. 4th DCA 2001)). In
 
 Rosecan,
 
 we held that, for purposes of determining alimony, the trial court erred in refusing to impute a reasonable rate of return on stock investments distributed to the wife. The basis for the trial court’s ruling was that the parties had invested in growth stocks with limited current income potential. We rejected the limitation on income on this basis, concluding that this would essentially inject a “savings component” into alimony, condemned by
 
 Mallard.
 
 We said:
 

 Our supreme court has determined that “[i]n awarding alimony, the court may not factor in speculative post-dissolution savings based upon a marital history of frugality.”
 
 Mallard v. Mallard,
 
 [citation omitted]. Put another way, “alimony may not include a savings component.” [citation omitted]. In
 
 Donoff v. Donoff,
 
 [citation omitted], this court cited
 
 Mallard
 
 and stated that trial courts may not “increase the amount of alimony by adding an investment (i.e., growth) allowance.... ”
 

 Rosecan,
 
 985 So.2d at 609-10. We quoted with approval language from
 
 Overbay v. Overbay,
 
 376 N.J.Super. 99, 869 A.2d 435, 441 (2005), which expressed the Florida position with respect to investment assets:
 

 when a spouse with underearning investments has the ability to generate additional earnings—without risk of loss of depletion of principal—but fails to do so, it is fair for a court to impute a more reasonable rate of return to the under earning assets, comparable to a prudent use of investment capital.
 

 Overbay,
 
 869 A.2d at 443.
 

 Likewise, in
 
 Donoff,
 
 we held that the court erred in failing to consider income from an IRA account as available to the former wife for the purposes of her support, even though it was available without penalty. We remanded with a strong suggestion that, given her resources available, it would be difficult for her to establish her need for alimony. The former
 
 *549
 
 wife attempts to distinguish
 
 Donoff
 
 by suggesting that it merely directed the trial court to' “consider” the IRA income without making imputation of income from the annuities mandatory. But section 61.08, Florida Statutes, requires that the court “consider” all of the foregoing factors. The court would abuse its discretion not to take into account evidence presented that shows that a spouse has a substantial source of income available but refiises to access it. On the other hand, if the amount were small compared to the expense and difficulty of setting up a payment plan, or payments would encroach on principal, or other equitable factors would permit the court to exclude the income, then the trial court could disregard such evidence. Those decisions come within the discretion of the trial court.
 
 See Canakaris v. Canakaris,
 
 382 So.2d 1197, 1201 (Fla.1980).
 

 Were the court to disregard the income producing potential of the assets awarded to the wife, the husband would be required to pay more alimony to the wife, so that the wife’s IRA accounts would continue to grow in principal. In essence, the alimony payment would allow the wife to increase her savings.
 
 Mallard
 
 holds that “alimony may not include a savings component.” Here, if the wife is not required to use the available income, which does not reduce principal, the alimony would include a savings component.
 

 The wife contends that
 
 Castaldi v. Castaldi,
 
 968 So.2d 713 (Fla. 2d DCA 2007), rejects the consideration of IRA income for purposes of determining alimony. In
 
 Castaldi,
 
 the trial court distributed1 equally the husband’s retirement accounts, although the opinion does not state what types of accounts these were. At the time the parties were both still working and had not drawn on the accounts. The trial court did not attribute any income to the wife from her share of the retirement accounts. On appeal, the Second District affirmed, relying on
 
 Diffenderfer v. Diffenderfer,
 
 491 So.2d 265 (Fla.1986), in which the supreme court held that in a divorce vested pension benefits could be treated as marital assets or a source of income but not both. However, the benefits considered in
 
 Diffenderfer
 
 were employer paid benefits, not the IRAs and annuities involved in this case. If
 
 Castaldi
 
 involved pension benefits of the
 
 Diffenderfer
 
 type, it would be inapplicable to this fact situation. If
 
 Castaldi
 
 involved IRA accounts or annuities, then we would disagree and certify conflict with its holding that the court could not consider the amount of income available to the wife from the asset she acquired in equitable distribution.
 

 Kitchens v. Kitchens,
 
 4 So.3d 1 (Fla. 4th DCA 2009), relied on by the wife, is also distinguishable. There, we held that the trial court erred in treating discretionary withdrawals of IRA principal after retirement as income for the purposes of child support. In contrast, in this case the trial court’s imputation of income from the IRAs and annuities did not invade principal but imputed income to that principal.
 

 Finally, the wife argues that imputing income to the wife from an early withdrawal of payments from an IRA is contrary to public policy. We disagree. IRAs constitute a tax-advantaged retirement savings plan, but it is exactly that — a savings plan. Other methods of savings and investment are also intended to assist persons in retirement and should not be treated any differently than an IRA when divorce occurs. As in
 
 Rosecan,
 
 if the parties had their assets in growth producing stocks with little income potential, or if their stocks were enrolled in dividend reinvestment programs which produced no “available” income to them, nothing should shield those assets from being considered
 
 *550
 
 as capable of producing income. In fact, the Legislature amended section 61.08 last year to state specifically that the trial court shall consider
 
 “All
 
 sources of income available to either party,
 
 including income available to either party through investments of any asset held by that party.”
 
 The legislative policy with respect to alimony is clear. The trial court should consider the income available from investments of any assets held by that party.
 

 The trial court did not abuse its discretion in both considering and imputing income from a 72(t) plan of payments from the IRAs and annuities to the wife, reducing the husband’s alimony obligation. We stress that by using a 5% rate of return when the IRAs had historically earned more than that shows that the court did not invade principal. Thus, the wife retains the assets awarded to her in the dissolution, just the same as if she were awarded stocks and bonds not in an IRA.
 

 In this case, the assets approached 2.7 million dollars, which would yield a sizea-ble amount of income. There may be cases where the use of a 72(t) payment plan may yield so little in income as to make it impractical to use as a source of income. Moreover, the expert calculations to determine the amount and the payment plans may prove more costly than the amount of income available. Therefore, as we noted before, after consideration of the evidence presented, the court could decline to impute income from retirement accounts for equitable considerations to do justice in the case.
 

 We would further note that our decision can work both ways. In a proper case, the court could consider income available to the paying spouse when determining an ability to pay alimony. In a case where a spouse may be claiming a reduction in earned income but with substantial IRA or other retirement plans, a court could impute income to a paying spouse pursuant to a 72(t) plan in order to assure that a spouse’s alimony needs are met.
 

 The wife further argues that there was no competent evidence that her IRA and annuities would grow at a 5% rate. She claims that the trial court relied on impermissible speculation to impute an amount of income to the wife from her assets. Any decision to impute income must be supported by competent substantial evidence.
 
 See Brown v. Cannady-Brown,
 
 954 So.2d 1206 (Fla. 4th DCA 2007). In this case, both experts testified that 5% was a reasonable rate of return for investments. Further, the husband’s forensic accountant testified that historically, the IRAs had achieved a 9% return on investment. Thus, attributing a 5% return was very conservative. Nevertheless, the wife argues that the significant downturn in the economy and reduction of rates of return shows that the court’s imputation of a 5% return is speculative and that now the wife is faced with a diminution of principal.
 

 Hindsight is always 20/20. A trial court, however, must rule based upon the evidence presented. On appeal, the court is limited to the record before the trial court as to whether the court erred. The court rendered its final judgment in January 2008, before the collapse of the economy. The post-dissolution changes in the parties’ positions does not render the final judgment erroneous. Post-dissolution changes may be properly addressed, where appropriate, in modification proceedings.
 

 As it is, we conclude that the expert evidence established that the IRA funds historically earned more than the rate of return used by the trial court. Further, both expert accountants agreed that 5% was a reasonable rate of return. The
 
 *551
 
 court had competent substantial evidence to support its decision.
 

 For the foregoing reasons, we conclude that the trial court’s imputation of income from the IRA and annuity accounts was proper. We affirm on this issue and all other issues raised in the appeal and cross-appeal.
 

 POLEN and STEVENSON, JJ., concur.