NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

MICHAEL B. SIKORA,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　Appellant/Cross-Appellee,　　)
　　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　　)　　　Case No. 2D14-1073
　　　　　　　　　　　　　　　　　　　　)
CAROLE M. SIKORA,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　Appellee/Cross-Appellant.　　)
　　　　　　　　　　　　　　　　　　　　)

Opinion filed July 10, 2015.

Appeal from the Circuit Court for
Hillsborough County; Richard A. Nielsen,
Judge.

Christine A. Hearn of Himes & Hearn, P.A.,
Tampa, and Steven L. Brannock of
Brannock & Humphries, Tampa, for
Appellant/Cross-Appellee.

Mark F. Baseman of Older & Lundy,
Attorneys at Law, Tampa, for
Appellee/Cross-Appellant.


MORRIS, Judge.

　　　　　　Michael Sikora, the former husband, appeals the final judgment of the

dissolution of his marriage to his former wife, Carole Sikora. He challenges the amount

of alimony awarded to the former wife on the basis that it exceeds her established need.

He also challenges the requirement that he obtain a 2 million dollar life insurance policy to secure the alimony obligation, arguing that the trial court failed to make findings regarding the availability and cost of a such a policy, as well as the former husband's ability to pay for it. Finally, he contends that the trial court erred by awarding the former wife $25,000 in lump sum alimony to cover the former wife's medical expenses because the evidence at trial established that all but approximately $8900 of those expenses had already been paid by the former husband.

The former wife has filed a cross-appeal. She argues that the trial court failed to make the alimony award retroactive to the date of the filing of the petition for dissolution of marriage. She also asserts error in the equitable distribution of assets. She contends that the trial court erred by crediting her with an asset that had already been spent on necessary medical procedures. Lastly, she asserts trial court error in the imputation of income to her from retirement assets where there had been no evidence produced to establish the rate of return on such assets.

We agree with the arguments made by both the former husband and the former wife. We therefore reverse and remand.

## I. BACKGROUND

The parties were married in 1980 in Maryland. They have three children who were all adults at the time of trial. The former husband had a successful career as the manager of large, national law firms, and at one point, he was earning in excess of 1 million dollars per year. The former wife stopped working outside the home during the last fourteen years of the marriage. She had significant health issues that made her dependent on the former husband's income.

In 2009, the parties relocated to Tampa for the former husband's job. The parties purchased a home in which the former wife currently resides. However, due to the decline in the real estate market, the parties did not immediately put the Maryland home up for sale. It was not until after the parties separated in 2011 that the Maryland home was sold at a significant loss.

The former husband petitioned for dissolution in 2011 and the case proceeded to trial in October 2012. The parties' net worth was approximately 4 million dollars, and the trial court's equitable distribution award left each party with approximately 2 million dollars. The trial court awarded the former wife $17,500 per month in permanent, periodic alimony and required the former husband to secure his alimony obligation by purchasing and maintaining a 2 million dollar life insurance policy on himself with benefits payable to the former wife. The trial court also awarded the former wife $25,000 in lump sum alimony to cover medical and dental care costs that were incurred during the pendency of the action. After the final judgment of dissolution was rendered, the former husband moved for rehearing, but that motion was denied.

## II. ANALYSIS

### A. Permanent, periodic alimony

**1. In the absence of special circumstances, the trial court erred by awarding permanent, periodic alimony in an amount that exceeds the former wife's established need.**

The former husband does not dispute that the former wife is entitled to permanent alimony or that he had the ability to pay the amount of permanent, periodic alimony requested by the wife. Instead, he argues that the amount awarded exceeds the former wife's need.

"Permanent periodic alimony is used to provide the needs and the necessities of life to a former spouse as they have been established by the marriage of the parties." Canakaris v. Canakaris, 382 So. 2d 1197, 1201 (Fla. 1980). "[A]n award of alimony that exceeds the recipient spouse's need constitutes an abuse of discretion." Lin v. Lin, 37 So. 3d 941, 942 (Fla. 2d DCA 2010); see also Rosecan v. Springer, 845 So. 2d 927, 929 (Fla. 4th DCA 2003) ("Absent special circumstances . . . , an alimony award should not exceed a spouse's need.").

In this case, the former wife submitted a schedule at trial that listed her net need at $17,811 per month. However, $6148 of this amount was the cost of maintaining a second home in Maryland and, at the time of trial, the Maryland home had already been sold. The evidence at trial established that other than the two-year period in which the parties carried the Maryland home waiting for the real estate market to rebound, they had never maintained a "two-home lifestyle." And in the final judgment, the trial court found that the former wife did not establish a two-home lifestyle and thus "[e]xpenses relating to the claimed 'two-home lifestyle' have not been considered as part of the [former] [w]ife's need." Additionally, the parties compromised on the former wife's request for alimony to cover vacation expenses and the trial court found that the former wife's need should be reduced another $620. Thus deducting those two expenses from the $17,811 figure should have resulted in the former wife's net need being set at $11,043 per month.

Yet, the trial court's order awarded $17,500 in monthly gross alimony. The trial court did not explain how it concluded that the $17,500 amount was appropriate nor did it provide its calculations either in the final judgment or in the denial of the motion for

- 4 -

rehearing. The final judgment also fails to indicate whether, as part of its determination as to the former wife's need, the trial court factored in the income it imputed to the former wife.

Because the trial court failed to include findings detailing any special circumstance that would explain why alimony was awarded in an amount exceeding the amount necessary to meet the former wife's need, we must reverse and remand the permanent alimony award. On remand, the trial court must either include such findings or reconsider the issue in its entirety.

**2. The trial court erred by imputing income to the former wife from her retirement accounts where there was no evidence to support the imputation.**

In her cross-appeal, the former wife argues that in determining her need for alimony, the trial court erred by imputing retirement income to her at a 3.5% rate of return where there was no evidentiary support for applying that percentage.

Trial courts may impute income from interest earned on retirement accounts if the income is readily available to a spouse without penalty and without the need to reduce the principal. See Niederman v. Niederman, 60 So. 3d 544, 550 (Fla. 4th DCA 2011). However, "[a]ny decision to impute income must be supported by competent[,] substantial evidence." Id.

The former wife acknowledges that under current Internal Revenue Service regulations, there is a method for withdrawing monies out of retirement accounts without penalty and that that method requires the use of a "reasonable rate of return." However, the problem in this case is that there was no evidence presented to support the 3.5% rate of return used by the trial court.

At trial, the former wife agreed that she should be imputed income from her *investment* accounts that were awarded to her in equitable distribution. And the parties' experts agreed that 3.5% was the correct return rate applicable to these investments, generating approximately $2013 in monthly income. However, there was no such agreement on the rate of return for the former wife's *retirement* accounts. The former husband's expert admitted he did not perform a historical analysis on the rate of return for those accounts and was not prepared to testify regarding historical trends of the S&P 500. Thus the former wife argued that income should not be imputed to her from the retirement accounts. The trial court rejected the former wife's arguments and imputed monthly income to her from the retirement accounts, using the same 3.5% return rate, resulting in approximately $1934 per month.

In Niederman, the parties' experts agreed on a 5% rate of return for retirement accounts. 60 So. 3d at 550. However, there was also evidence that the historical rate of return for those accounts was 6% to 9%. Id. at 547. Thus the court concluded that the trial court's decision to impute income at a 5% rate of return would not require the former wife to invade the principal and was supported by competent, substantial evidence. Id. at 550-51.

But in this case, there was neither an agreement of the experts on the rate of return for the retirement accounts nor any evidence of the historical rate of return. Instead, the trial court selected the same rate of return used for imputing income on the former wife's investment accounts. Without some sort of evidentiary foundation, the imputation of income cannot stand. There was simply no competent, substantial

evidence to support the 3.5% rate of return for imputing retirement income to the former wife. Consequently, on remand, the alimony award should be adjusted accordingly.

### 3. The trial court should reconsider the retroactive application of the alimony award on remand.

The former wife also challenges the trial court's failure to make the alimony award retroactive to the date of filing of the petition for dissolution.

Generally, when a trial court awards alimony, it abuses its discretion if it fails to make the award retroactive to the date of filing the petition for dissolution. See Featherston v. Featherston, 86 So. 3d 549, 551 (Fla. 2d DCA 2012). There is an exception where the trial court enters a temporary alimony award during the pendency of the case. See Kraus v. Kraus, 749 So. 2d 513, 514 (Fla. 2d DCA 1999). In that situation, a retroactive award is limited to the date that the request for an increased award is filed. See id. However, we have previously recognized that a temporary alimony award can be readdressed at a final hearing if the temporary award was made "without prejudice." Dent v. Dent, 851 So. 2d 819, 820 (Fla. 2d DCA 2003).

In this case, the parties stipulated that the former husband would pay temporary alimony, and the court awarded temporary alimony "without prejudice." Given our reversal of the permanent, periodic alimony award, the trial court should, on remand, reconsider the issue of retroactivity of any newly imposed permanent, periodic alimony award. This should be done after comparing such award to the stipulated temporary alimony.

### B. Life Insurance

In the proceedings below, the former wife requested that the alimony award be secured by the former husband's obtaining a 3 million dollar life insurance

policy on himself with benefits payable to the former wife. The trial court ultimately ordered the former husband to secure a 2 million dollar policy. Yet the final judgment gives no explanation for how this amount was arrived at or what it was based on.

At the time of trial, the former husband had two life insurance policies each with a face value of 1.5 million dollars. The former husband testified that each policy cost between $1500 and $1600 per year. And there was evidence presented that the former husband would have a significant surplus of income even after paying the $17,500 alimony award. That evidence proved that he was insurable when he purchased the policies and that he had the ability to pay the premiums at the time. However, there was no evidence presented regarding his current insurability based on a 2 million dollar policy or the cost of such a policy.

In Massam v. Massam, 993 So. 2d 1022 (Fla. 2d DCA 2008), we reversed a final judgment of dissolution because the trial court failed to include findings relating to the former husband's insurability at the time of trial and the cost of an insurance policy. And in Payton v. Payton, 109 So. 3d 280, 283 (Fla. 1st DCA 2013), the court reversed a final judgment where the trial court failed to include findings regarding the "reasonable availability" and cost of an insurance policy or the former husband's ability to pay.

In this case, the trial court's failure to explain how it arrived at the 2 million dollar requirement is particularly troublesome because the specific amount of coverage bears no correlation to projected alimony amounts and we cannot ascertain if the trial court ordered life insurance for purposes other than securing alimony due at the time of the former husband's death. See Zangari v. Cunningham, 839 So. 2d 918, 920 (Fla. 2d DCA 2003); Merkin v. Merkin, 804 So. 2d 595, 598 (Fla. 2d DCA 2002). Consequently,

because the trial court failed to include the required findings, we reverse the life insurance requirement and remand for further proceedings.

### C. Lump Sum Alimony

In the final judgment, the trial court directed the former husband to pay the former wife $25,000 to cover the expenses of her health care that were incurred during the pendency of the dissolution proceedings. Evidence at trial revealed that the former wife had actually spent $85,000 on necessary medical and dental procedures. However, there was also evidence that the former husband had paid those expenses with marital assets pursuant to an order of interim relief. The former wife presented evidence that she still owed approximately $8900 over and above the $85,000 that had already been paid.

There was simply no evidence to justify the $25,000 lump sum alimony award, and the trial court made no findings to explain its rationale. Courts have previously reversed lump sum alimony awards that have no evidentiary support. See Saporito v. Saporito, 831 So. 2d 697 (Fla. 5th DCA 2002). However, we recognize that there is evidence to support an award of $8900. We thus reverse and remand for the trial court to reconsider the award based on the evidence in the record.

### D. Attributing Dissipated Assets as Part of Equitable Distribution

The former wife's last argument on cross-appeal is that the trial court erred by attributing $85,000 to her as part of the equitable distribution where those monies had already been spent on her necessary medical and dental expenses during the pendency of the proceedings.

Generally, "it is error to include assets in an equitable distribution scheme that have been diminished or dissipated during the dissolution proceedings." Roth v. Roth, 973 So. 2d 580, 584 (Fla. 2d DCA 2008) (citations omitted). "However, an exception to this general proposition exists when misconduct during the dissolution proceedings results in the dissipation of a marital asset." Id. at 584-85.

> The misconduct necessary to support inclusion of dissipated assets in an equitable distribution scheme does not include mismanagement or simple squandering of marital assets in a manner of which the other spouse disapproves. Instead, to include a dissipated asset in the equitable distribution scheme, there must be evidence of the spending spouse's intentional dissipation or destruction of the asset, and the trial court must make a specific finding that the dissipation resulted from intentional misconduct.

Id. at 585 (citations omitted).

Here, the trial court justified attributing the monies to the former wife on the basis that she had failed to "fully document the expenses and her request for insurance reimbursement," something that the former wife agreed to do in a stipulation entered into by the parties. However, there was no dispute that the monies had been used to pay for the former wife's necessary medical expenses. Further, the former husband's expert made it clear that he was not alleging any misconduct on the part of the former wife in relation to those monies. Thus the trial court's decision to attribute the monies to the former wife in the equitable distribution amounts to a sanction for failing to comply with a documenting requirement. That is not the standard for attributing dissipated assets to one spouse in dissolution proceedings. Cf. Roth, 973 So. 2d at 584-85. Consequently, because there was no evidence to support the inclusion of the

- 10 -

$85,000 in the equitable distribution to the former wife, we reverse the trial court's equitable distribution awards and remand for further proceedings.

### E. Conclusion

As explained herein, the trial court erred in its awards of permanent, periodic alimony, lump sum alimony, and equitable distribution. The trial court also erred by requiring the former husband to obtain a life insurance policy to secure the alimony award where there was no evidentiary support for doing so. For these reasons, we reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded.


CASANUEVA and BLACK, JJ., Concur.