DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ERIK RITACCO,**
Appellant,

v.

**BOBBIE RITACCO,**
Appellee.

Nos. 4D19-809 and 4D19-3888

[January 27, 2021]

Consolidated appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Janis Brustares Keyser, Judge; L.T. Case No. 502017DR012133XXXXMB.

Jonathan S. Root and Christopher A. Tiso of Jonathan S. Root P.A., Boca Raton, for appellant.

Holly Davidson Schuttler of Schuttler, Greenberg & Mullins LLC, Boca Raton, and Jeanne C. Brady of Brady & Brady P.A., Boca Raton, for appellee.

KLINGENSMITH, J.

Appellant Erik Ritacco ("Former Husband") appeals the trial court's Final Judgment of dissolution of marriage. Appellee Bobbie Ritacco ("Former Wife") cross-appeals the same Final Judgment. Both parties raise numerous issues on appeal and, for the reasons stated below, we affirm in part and reverse in part.

I.      Background

The parties were married for over twenty-two years. During the marriage, Former Wife did not work outside of the home because she raised the parties' two daughters. Former Husband is a police officer and was the household's income producer during the marriage. He receives a monthly pension and holds a Deferred Retirement Option Plan ("DROP") account from a prior employer in addition to drawing a salary at his current position with the Palm Beach County Sheriff's Office (PBSO). When the petition for dissolution was filed, one of the daughters was a minor but both children are now adults.

II.    Calculating Former Wife's Alimony Award

"An award of alimony will usually not be reversed on appeal absent an abuse of discretion.  However, [w]here a trial judge fails to apply the correct legal rule … the action is erroneous as a matter of law." *Dickson v. Dickson*, 204 So. 3d 498, 502 (Fla. 4th DCA 2016) (alteration in original) (quoting *Ondrejack v. Ondrejack*, 839 So. 2d 867, 870 (Fla. 4th DCA 2003)).

Former Husband claims the trial court erred when it found that Former Wife was entitled to permanent alimony and declined to classify Former Wife's potential DROP interest returns as income.  We disagree as to both arguments.  However, we agree with Former Husband that the trial court erred in calculating the alimony award by considering his employee benefits as income and basing its calculations on the parties' gross income.

The trial court did not err in awarding Former Wife permanent alimony because the parties were married for over twenty-two years, a long-term marriage under section 61.08, and Former Husband did not overcome the presumption in favor of permanent alimony.  *See Dickson*, 204 So. 3d at 502–03.  The trial court made the requisite factual findings pursuant to section 61.08(2), Florida Statutes (2017), to determine permanent alimony was appropriate.  The trial court also found that Former Husband had the ability to pay alimony and that Former Wife had a demonstrable need.  *See Zeballos v. Zeballos*, 951 So. 2d 972, 974 (Fla. 4th DCA 2007).

The parties agreed to split the DROP account equally based on the value at the time of division and that Former Wife's half would be transferred to an Individual Retirement Account (IRA) in her name.  The DROP account earns interest annually.  Former Husband argued that the trial court should impute investment income to Former Wife because of the interest she would earn from her half of the DROP account.  Former Wife provided testimony that she would not receive investment income from the DROP account because she was planning on withdrawing a large portion from the account as a down payment on a house, and that for the remaining funds, the use of a section 72(t) withdrawal plan was impractical because of the ten percent penalty she would incur for making an early withdrawal due to her age.[1]  *See Niederman v. Nierderman*, 60 So. 3d 544, 550 (Fla. 4th DCA 2011).

"A court should impute income that could reasonably be projected on a former spouse's liquid assets." *Id.* at 548 (quoting *Rosecan v. Springer*, 985 So. 2d 607, 609 (Fla. 4th DCA 2008)).  "'When a party receives an asset in equitable

---

[1] Section 72(t) refers to Internal Revenue Code section 72(t), which specifies exceptions to the early-withdrawal ten percent tax that can allow IRA and 401K account owners to withdraw funds from their retirement account before age 59½, if certain qualifications are met.

distribution that will result in immediate investment income,' that income should not be excluded for purposes of determining alimony." *Sherlock v. Sherlock*, 199 So. 3d 1039, 1044 (Fla. 4th DCA 2016) (quoting *McLean v. McLean*, 652 So. 2d 1178, 1181 (Fla. 2d DCA 1995)).

The trial court did not abuse its discretion when it decided not to impute the investment income from the DROP account to the Former Wife. After the trial court considers evidence regarding a 72(t) payment plan, it can decline to impute investment income for equitable reasons. *See Regan v. Regan*, 217 So. 3d 91, 94 (Fla. 4th DCA 2017). This is because "there may be cases where the use of a 72(t) payment plan may yield so little in income as to make it impractical to use as a source of income. . . . [P]ayment plans may [also] prove more costly than the amount of income available." *Niederman*, 60 So. 3d at 550. The trial court considered the interest that could have been generated if Former Wife had elected to receive funds from the DROP account under a 72(t) payment plan, and it was within its discretion to decline to include those funds as imputed income. *See Regan*, 217 So. 3d at 94.

However, the court erred in considering Former Husband's employee benefits, including health and vision insurance, as income for the purpose of alimony calculation. These benefits are not liquid assets or in-kind payments. *See Niederman*, 60 So. 3d at 548. The case law that identifies insurance as income relies on section 61.30, the child support guidelines, which has a broader definition of "income" that includes in-kind payments. *See Cozier v. Cozier*, 819 So. 2d 834, 836 (Fla. 2d DCA 2002); *Dep't of Revenue o/b/o Shorter v. Amico*, 265 So. 3d 681, 683 (Fla. 5th DCA 2019). Even using this more expansive definition, Former Husband's insurance would not be considered income. The evidence showed that as an employee of PBSO, Former Husband cannot opt out of his insurance benefits and choose instead to have additional income. *See Long v. Long*, 967 So. 2d 1069, 1070 (Fla. 4th DCA 2007) (holding that for a business expense to qualify as income, there must be evidence at trial that the business expense reduced living expenses).

Further, we agree with Former Husband that the trial court's decision to make all alimony decisions based on the parties' gross income was error. *See Julia v. Julia*, 263 So. 3d 795, 797 (Fla. 4th DCA 2019); *see also Badgley v. Sanchez*, 165 So. 3d 742, 744-45 (Fla. 4th DCA 2015) ("The judgment is also deficient for failing to look to the parties' *net* incomes in assessing need and ability to pay.").

We affirm Former Wife's award of permanent alimony and the trial court's decision to exclude any potential income from the DROP account from income calculations. But we reverse and remand for the trial court to remove Former Husband's employee benefits as part of his income and to calculate alimony based on net income. "The court may hold an evidentiary hearing if it needs

3

additional evidence to make the required findings." *Rentel v. Rentel*, 124 So. 3d 993, 994 (Fla. 4th DCA 2013).

### III. Securing the Alimony Award with Life Insurance and Pension

"We review a trial court order requiring that a party maintain life insurance for abuse of discretion." *Jimenez v. Jimenez*, 211 So. 3d 76, 79 (Fla. 4th DCA 2017). The trial court can issue this order "only if there is a demonstrated need to protect the alimony recipient." *Forgione v. Forgione*, 845 So. 2d 968, 969 (Fla. 4th DCA 2003) (quoting *Moorehead v. Moorehead*, 745 So. 2d 549, 552 (Fla. 4th DCA 1999)). "The 'demonstrated need' must be supported by competent, substantial evidence." *Galstyan v. Galstyan*, 85 So. 3d 561, 566 (Fla. 4th DCA 2012).

The trial court found that Former Husband works in a dangerous field and could afford to pay the monthly premium for life insurance. It further found that without the alimony payments, Former Wife could become destitute. The court did not err in finding that Former Husband had the ability to pay for life insurance and that Former Wife has a demonstrable need. *See Galstyan*, 85 So. 3d at 566; *Forgione*, 845 So. 2d at 96.

However, the trial court erred by requiring Former Husband provide collateral that exceeds the amount of his support obligation. *See Brennan v. Brennan*, 122 So. 3d 923, 926–27 (Fla. 4th DCA 2013) ("[T]he amount of life insurance required must not exceed the support obligation."). Former Wife is entitled to half of Former Husband's pension as part of the equitable distribution of assets but if Former Husband were to die, she would be the 100% beneficiary of the pension. As the 100% beneficiary of Former Husband's pension, Former Wife would receive an amount that exceeds her current alimony award. Thus, assigning Former Wife both life insurance and the 100% pension survivor benefit would overcompensate her. *See Mallard v. Mallard*, 771 So. 2d 1138, 1140 (Fla. 2000) ("Current necessary support rather than the accumulation of capital is the purpose of permanent periodic alimony.").

We affirm the order for Former Husband to maintain insurance but reverse and remand for the trial court to amend the final judgment so that the collateralization of Former Wife's alimony award does not exceed Former Husband's support obligations. *See Brennan*, 122 So. 3d at 926–27.

### IV. Classifying Withdrawal from Home Equity Line of Credit ("HELOC") as Marital Debt

"The standard of review of a trial court's determination of equitable distribution is abuse of discretion." *Steele v. Steele*, 945 So. 2d 601, 602 (Fla. 4th DCA 2006) (quoting *Kovalchick v. Kovalchick*, 841 So. 2d 669, 670 (Fla. 4th

DCA 2003)).  "Distribution of the marital assets and liabilities must be supported by factual findings in the judgment or order based on competent, substantial evidence."  *Krift v. Obenour*, 152 So. 3d 645, 649 (Fla. 4th DCA 2014).  However, "[a] trial court's legal conclusion that an asset is marital or nonmarital is subject to de novo review."  *Mondello v. Torres*, 47 So. 3d 389, 392 (Fla. 4th DCA 2010).

On the day she filed the petition for dissolution, Former Wife moved out of the home with her youngest daughter and withdrew $65,761.00 from the parties' HELOC and deposited it into her bank account to support herself and the youngest daughter.  Former Wife testified she used the HELOC money to pay for food, clothing, gas, and medical visits for the daughter after she filed for divorce because Former Husband blocked her access to other financial accounts.  She also claimed that she had to leave the home because Former Husband was abusive.  Former Husband argues that the HELOC withdrawal which Former Wife made upon petitioning for divorce is a nonmarital debt.

Section 61.075(7), Florida Statutes (2017), provides that the date for determining whether assets and liabilities are considered marital or non-marital is the date of the petition for dissolution.  This statute states:

> The cut-off date for determining assets and liabilities to be identified or classified as marital assets and liabilities is the earliest of the date the parties enter into a valid separation agreement, such other date as may be expressly established by such agreement, *or the date of the filing of a petition for dissolution of marriage.*

§ 61.075(7), Fla. Stat. (2017) (emphasis added); *see Rao-Nagineni v. Rao*, 895 So. 2d 1160, 1161 (Fla. 4th DCA 2005).  "All assets acquired and liabilities incurred by either spouse subsequent to the date of the marriage and not specifically established as nonmarital assets or liabilities are presumed to be marital assets and liabilities."  *Krift*, 152 So. 3d at 649 (quoting § 61.075(8), Fla. Stat. (2012)).  If "the parties did not have a separation agreement or agree on any alternative date in any other agreement, the trial court should have identified the assets and liabilities as marital as of the date of the filing of the petition for dissolution."  *Schmitz v. Schmitz*, 950 So. 2d 462, 463 (Fla. 4th DCA 2007).

Despite finding that Former Wife incurred these expenses as a necessity, the trial court nonetheless erred when it included a $65,761.00 withdrawal from the HELOC made on the day Former Wife filed her petition for dissolution as a marital debt.  *See Mondello*, 47 So. 3d at 392.  Since Former Wife incurred the debt on the day she filed for divorce, *see Krift*, 152 So. 3d at 649, the court erred in considering that amount as part of the marital debt.  *See also Schmitz*, 950 So. 2d at 463.  As such, we reverse on this issue.  On remand, the trial court should take this into account when calculating any equalizing payments from Former Husband.  *See Fortune v. Fortune*, 61 So. 3d 441, 446 (Fla. 2d DCA 2011)

5

("[a] lump sum equalizing payment to accomplish equitable distribution 'is properly awarded only when the evidence reflects a justification for such an award'" (citations omitted)).

### V. Award of Gross Pension Income

"Decisions of the trial court concerning the equitable distribution of marital assets are reviewed under an abuse of discretion standard." *Pomeranz v. Pomeranz*, 901 So. 2d 895, 896 (Fla. 4th DCA 2005). "When evidence of a tax impact is presented, it is error for the trial court to fail to consider these consequences." *Diaz v. Diaz*, 970 So. 2d 429, 432 (Fla. 4th DCA 2007).

"Distribution of marital assets must be equal unless there is justification in the record supporting the court's disparate treatment." *Spielberger v. Spielberger*, 712 So. 2d 835, 836 (Fla. 4th DCA 1998). "Unequal distributions must find their authority in specific facts relating to the statutory factors rather than in generalized and indeterminate notions of equity." *Robbie v. Robbie*, 788 So. 2d 290, 293 (Fla. 4th DCA 2000).

The trial court ordered that Former Husband pay half of his gross pension income to Former Wife without accounting for any tax liability. However, if Former Wife receives half of the gross amount, and Former Husband is solely responsible for the taxes paid on the total amount, then Former Wife receives a significantly larger portion of pension income. *See Lopez v. Hernandez*, 252 So. 3d 266, 268 (Fla. 4th DCA 2018). This constitutes an unequitable distribution, *see Pomeranz*, 901 So. 2d at 896, which would have required the trial court to make factual findings that show an unequal distribution is appropriate. *See Robbie*, 788 So. 2d at 293. The trial court's intentions on this matter are not clear from the record. If the trial court intended for Former Wife to receive more of the pension income, then it was required to consider the tax consequences that Former Husband brought to the trial court's attention and make factual findings that supported such an unequal distribution. *See Diaz*, 970 So. 2d at 432.

Therefore, we reverse and remand this issue to the trial court for further consideration and any appropriate findings as required.

### VI. Conclusion

In conclusion, we affirm the Final Judgment in part and reverse in part with instructions for the trial court to make modifications consistent with this opinion on remand. We affirm the other issues raised by the parties on both the appeal and cross-appeal without comment. Revisiting the issues remanded for reconsideration may, by necessity, impact various calculations and findings in the Final Judgment that were not specifically addressed in this opinion. Despite

our affirmance of those issues without comment, the trial court is not precluded from reconsidering and amending its prior findings on those matters if actions needed on remand will require additional modifications to give equity to the parties.

*Affirmed in part, reversed in part, and remanded with instructions.*

DAMOORGIAN and GERBER, JJ., concur.

*     *     *

**Not final until disposition of timely filed motion for rehearing.**